Kirkpatrick C. J.
This is a motion to amerce the sheriff of the county of Essex, in these three actions, upon a case stated and submitted to the consideration of the court. The motion rests wholly upon the “ act for the relief of creditors against corporations,” passed the 31st of January 1817.
The act directs “ that the first process to be used against corporations shall be a summons; that if such summons shall be returned not summoned or not served, the court shall make an order directing the defendant to appear, &c.; *505 and that after the entry of such order, it shall not be lawful for such corporation to grant, bargain, sell, alien or convey their lands, or any part thereof, until the plaintiff be satisfied his lawful demand ; that the said action shall he a lien upon such lands from the time of entry, and that the same may be sold on execution, in the same manner as if no conveyance thereof had been made by such corporation.”
Ifere these plaintiffs, in the term of February 1817, entered their respective rules upon the corporation to appear, and an appearance being entered for them, they so proceeded as to enter judgment in November term 1817, and to sue out executions and deliver the same to the sheriff on the 18th of the same month, returnable to February term following. The sheriff levied the said executions on the lands of the said corporation, on the same day, and immediately thereafter advertised the same for sale by virtue of the said execution, and after adjourning the said sale thereof, several times, now absolutely refuses to sell at all.
* While the plaintiffs were thus proceeding in their suits, to wit, on the 7th of March 1817, the said corporation confessed one judgment to Joseph Shotwell, and another to John Jacobs and Joseph Shotwell, for large sums of money upon which executions were sued out and put into the hands of the same sheriff, on the 8th of March 1817, by virtue of which he sold the said lands of the said corporation, on the 3rd of October following, subject to prior incumbrances, of which incumbrances and particularly of this action, and of the entry of those orders, the purchaser had notice. After the term of February, and before the term of November 1817, sundry judgments were entered by default under this act, against the said corporation, in the Court of Common Pleas of the county of Essex and executions thereupon issued, which said judgments and executions, as well as those of the ShotweUs, were preferred by the sheriff to the judgments and executions of those plaintiffs, and paid out of the proceeds of the said sale.
Upon this case, the counsel for the plaintiffs have stated certain questions about the priority of their lien and their judgments to those of the ShotweUs, entered by con *506 fession, and those in the Common Pleas entered by debut the real question is, whether the sheriff, upon the whole case, is liable to an amercement. I state the question in this form, because though I am n0£ willing to say that these judgments ought to be pre- ® J G ® r ferred to those, or indeed ought, at all, to be paid out of the avails of the sale, jret I think the sheriff ought to be amerced. For
1. The confession of judgment and a sale by the sheriff, in pursuance of that judgment, is in the strictest sense an alienation by the corporation, and therefore, as against these plaintiffs, is inoperative and leaves the land liable to be sold upon their' executions in the same manner as if no such conveyance had ever been made. I say it is in the strictest sense an alienation by the corporation, for it is wholly immaterial whether one actually make the conveyance himself, or constitute an agent or trustee to make it for him, or, in order to render the transaction still more solemn, go into a court of justice, and by certain forms of proceeding, procure it to be made by the officer of the law; still it is his own act. But if it be possible that I should be mistaken in this, yet I think, notwithstanding, the sheriff must be amerced. For
*?. Even if these judgments had been entered against the corporation, in invitum, and executions had been issued thereupon and-the land sold, as well it might, yet these orders, entered by the plaintiffs, gave them a lien upon it for their debts, and subjected it to their executions, as well in the hands of such purchaser as the corporation itself.
For what is a lien ? what is its nature and operation ? It is a French, word, and originally signifies a string, tie, or band, and in the metaphorical sense in which the law uses it, it signifies such hold or claim upon a thing, for the satisfaction of a debt, duty or demand, as that it cannot be taken away until the same be satisfied and paid. It is in this sense properly applicable, and I believe originally, in our books, only applied to chattels, things moveable and easily passing from hand to hand; and with respect to these, this claim which one has upon them, is metaphorically called a lien, a string, which binds *507 them fast and holds them in his possession. In most instances in which one has such lien, if the debt or be not paid upon reasonable request and within reasonable time, the party himself may sell the chattel so held, without the intervention of any judicatory, as in the case of pledges &c.; but in this case, the act in expressly making the land liable to the plaintiff’s execution, impliedly directs that it shall be sold in that way and in no other; and this too is more analagous to the common course of this country, in selling lands for the payment of debts. In this hypothecated state then, or rather in this condition of being tied fast by this lien in the hands of the plaintiffs for the payment of their debts, this land was a proper subject to be taken in execution and sold for that purpose.
It seems to me that some confusion has arisen, in this case, from comparing this lien to a judgment. A judgment binds the land from the time of the entry, and it is in the nature of a lien upon it, in the hands of the plaintiff, for the payment of his debt; and yet if there be two or more consecutive judgments and the land be-sold upon the last, it cannot again be taken in execution and sold upon those that preceded or any of them; if they are to be satisfied at all, they must be satisfied out of the surplus of the monies arising upon such sale; and the land goes quit in the hands of the purchaser. But then it is to be remembered that this is a special provision created by statute, in case of judgments *only, and not according to the course of the common law, in the case of liens generally. For considering the judgment as a lien upon the land from the entry, if it were left as at common law, the sale upon the last judgment would not preclude another sale upon the preceding. In this case there is no such special provision, nay indeed it is, on the contrary, expressly directed that the land shall be sold to satisfy the lien, any other conveyance to the contrary notwithstanding.
For his refusal to proceed upon these executions, and to sell this land, therefore, for the benefit of the plaintiff, the sheriff must be amerced in the sum settled and agreed upon by the parties.
*508 Southard J.
The case presented upon this motion, shews that the sheriff has performed his duty strictly, so far as relates to the levy upon,' and subsequent sale of the property of the defendant. It further shews that he has not improperly retained any part of the money, but has paid the whole to persons claiming it, under the executions in his hands, according to the dates of the judgments and executions; paying those first which were first obtained and issued. This, in ordinary cases, would have been correct, and what the law required him to do. It is supposed however, that these judgments and executions upon which the motion to amerce is made, were entitled to priority, notwithstanding they were the last; and this right to priority, is supposed to arise from the facts; that in these actions, an order for the appearance of the defendant, was made, under the third section of the “ Act for the relief of creditors against corporations,” passed 31st- of January 1817; that this order was made, before any other orders or judgments were entered, and thus the actions became a lien, which must first be satisfied. The motion therefore, will rest on the construction of this third section, and terminates in the inquiry : what kind of lien is created by the entry of this order ? Is it such a pure, unqualified lien, as will hold the property, against every claim of every kind, and give the plaintiff a preference to other judgment creditors? I cannot view it in this light. Let us look at it. The first section of this law, directs the mode in which, process shall be served on corporations. The second section, determines the effect of such service. The third section, directs the court, to enter an order for *the appearance of the defendant, where the sheriff cannot serve the summons. The fourth section, which governs this case enacts, “ That it shall not be lawful for any corporation against whom any such order shall be made, after the entry of such order in the minutes of the court, to grant, bargain, sell, alien or convey, any lands, tenements or real estate, cfec. of which such corporation shall be seized, or entitled to, at the time of making such order, until the plaintiff, in the action, shall be satisfied his legal demand, or until judgment shall be entered for defendant, and the said action shall be and remain a lien on such *509 lands, tenements and real estate, from the time of entering the said order for publication, in the minutes of the court, and the said lands, tenements, and real estate> shall and may be sold on execution, as if no conveyance had been made by the said corporation.”
, It nas been supposed that there are two leading ideas, in this section. First, that the corporation shall not grant, bargain, sell, alien or convey, after the order is made. And second, that after this order, the action becomes a lien on the land, which follows it every wrhere.
The first of these propositions is unquestionably true. After the order for publication is made, the defendant has no longer the power to sell or transfer his estate, until the determination of the cause. He cannot sell or convey it away. It must remain subject to the just and legal demands of creditors. But I do not perceive that this will at all avail the plaintiff upon this motion. It has indeed been argued, that a confession of judgment was in effect, a conveyance of the land, as it occasioned its transfer. But this argument seems to me, to confound definitions and distinctions of words. It might as well be said, that a confession of judgment was a sale of personal goods and chattels, because they were sold under the execution. The statute takes away from the party, a portion of the ordinary right over, and use of his property, and ought not to be extended beyond the usual meaning of the terms. He may not sell or convoy, but he may confess judgment. A judgment may be entered against him. But the action is to be a lien on the lands; and they may be sold under the execution, as if no conveyance had been made; and it is argued, that this lien is unqualified and must first of all be satisfied. I apprehend, that an error on this part of the subject, arises from giving to the word lien, a force which it was never intended to possess. What *was the evil which the legislature intended to remedy, by this law ? Before its passage, various companies, designed to effect a great variety of objects, had sprung up in the state, with mushroom growth, and were incorporated. In some cases, not one member of the corporation, resided in the state, and when it became necessary to sue them, there was nobody upon whom process *510 could be served ; and by a sale of the estate which they held) they altogether eluded the payment of their debts. It was an evil worthy of legislative interference ; and this act was passed, as well to provide a mode in which process should be served, as to retain the property in such way as to make it answerable to the just demands against the corporation. This last, was the sole and exclusive object of the fourth section. It was for this purpose, and this only, that the action was made a lien on the land. It was to be an effectual lien between the corporation and the creditors; so that the one could not part with it, to the injury and defrauding of the other. But it never was designed, to give a preference to one creditor over another, and by the mere entry of an order on the minutes of a court, in favour of one, to prevent another from obtaining that priority which the regular prosecution and speedy termination of his suit would give him. The sole object, was to keep the property unchanged, within the process of the court. This is manifest too, not only from. the reason and object of the law, but from its very words. It does not say that the action shall be a lien, and there stop ; it adds, that the lands may be sold on execution, as if no conveyance had been made. On what execution may it be sold ? Not alone on the execution in favour of the creditor who obtained the order, but on any execution, in favour of any creditor. After this order is entered, if the corporation sell the land, it shall nevertheless be subject to the claims of judgment creditors, so long as that action is depending.
A different construction, of the statute, would lead to consequences the most serious and unjust. There is in it, no provision to compel the plaintiff who has obtained the order, to progress with and terminate his suit. He can suspend it, and if it be an unqualified lien, no judgment creditor can have the land sold, except subject to his uncertain claim, which may swallow up the whole. If this be so, all that a corporation has to do, when it is in difficulty, is to induce a friend to commence a suit; get his *order; let the cause delay and laugh at honest creditors. But again. A claim which has regularly progressed until within an hour of judgment, may, by this *511 construction, bo postponed to one, which, has only just been put in suit.
Nor does the evil rest here. If the doctrine contended for, be true, the lands of a corporation must be sold subject to as may lions of this kind, as either friendship or fraud may have been induced to create; and who could purchase under tlie uncertainty of their extent? A finer device to make property sell for nothing, and cheat creditors, could not have been contrived by legislative ingenuity. Such a construction of the law, never can be given.
In this case, I am of opinion, that the law effected its object by keeping this property within the process of the court and the reach of creditors: That the sheriff lias done right in paying the money arising from it, upon the judgments and executions, according to'their dates; and that the motion for amercement ought not to prevail.
Judgment of amercement entered.