# COURT OF ERRORS AND APPEALS

OF THE STATE OF NEW JERSEY,

## ON APPEAL FROM THE COURT OF CHANCERY,

### MARCH TERM, 1878.

| 29 | 291 |
|---|---|
| 47 | 577 |
| 29 | 291 |
| 48 | 194 |
| 29 | 291 |
| 59 | 124 |

ELIAS N. MILLER, receiver, appellant,

and

JOHN M. MACKENZIE and others, respondents.

A receiver appointed under the act providing for discovery, on the return of an unsatisfied execution, may file a bill in his own name to have the property discovered freed from claims and liens put upon it in favor of creditors.

This cause was argued at November term, 1877. No written opinion was delivered by the vice-chancellor, who adopted the opinion in *Higgins* v. *Gillesheiner*, 11 *C. E. Gr.* 308, as the opinion of the court, and governing this case.

The complainant, who was the appellant in this court, filed his bill in chancery, in his capacity as receiver, appointed under the act entitled " an act respecting executions," approved March 28th, 1874 (*Rev.* p. 393).

The bill set forth several alleged chattel mortgages, and sundry assignments and conveyances of goods and chattels made by the defendant in execution to the other defendants

Miller *v.* Mackenzie.

in the chancery suit, prior to the said receiver's appointment, and then alleged that such mortgages, assignments and conveyances were contrived in fraud, covin and collusion, with intent to hinder, delay and defraud the said judgment creditor, &c. The prayer was, that these instruments should be declared void as to the complainant and the judgment creditor, at whose instance he had been appointed, and that the goods and chattels covered thereby should be delivered up to the complainant.

The defendants demurred to the bill, and such demurrer was sustained. From that decree the present appeal was taken.

*Mr. Gilchrist*, for appellant.

*Mr. Wm. M. Lyon*, for respondents.

THE CHIEF JUSTICE.

The single question to be decided in this case is, whether a receiver appointed by virtue of the statute providing a method for discovering the concealed property of a judgment debtor on the return of an execution unsatisfied (*Rev.* p. 393), can, in his official character, exhibit a bill in chancery to annul sales of such property or encumbrances upon it, on the ground that such sales or encumbrances are in fraud of creditors.

After a critical examination of these statutory provisions, I am unable to concur in the view which denies to these officers the ability in question. There is, undoubtedly, a certain analogy between this class of receivers and that other class of persons who are appointed the custodians of property, *pendent lite*, by a court of equity, but such analogy cannot be traced beyond the general characteristics and purpose of the two officers. Receivers of both classes are called into existence for the purpose of holding property and turning it to account for the benefit of such persons as it may be ultimately decided are entitled to it. In these

Miller *v.* Mackenzie.

respects these two kinds of officials stand on the same footing; beyond this point anything like an exact resemblance ceases, and thenceforth they cannot be regulated by precisely the same principle. The one class is created by the court under its general authority, and the functions of the office are to be ascertained by a reference to ancient practice and usage; the other class is the creature of the statute, the measure of whose power is to be discovered in the legislative words and purpose; and it is obvious, therefore, that to regard the criterion by which the extent of the authority of these two official classes is to be graduated, would, many times, lead to error.

Then, looking to the statute, which is now pertinent as a guide, I see no reason for withholding from the complainant in this case the power to bring this suit. With regard to the personal property of the debtor, and it alone is here in question, it seems to me plain that one of these receivers, by the act of appointing him, becomes vested with the title. Defining the effect of his appointment, the act says that he " thereby shall receive authority to possess, receive, and, if need be, in his own name as such receiver, sue for such property or things in action." These terms are quite comprehensive, and, the statute being a remedial one, it would seem illegitimate to limit their effect unless compelled to such course by very cogent considerations. The right to sue here given, must comprehend the right to call for aid on the court of equity as well as to ask it of a court of law, otherwise purely equitable assets, although discovered, would be beyond the reach of the receiver. Both courts, therefore, being thus open to a receiver of this class, why, in a case situated as this one is, must this officer be told that he is confined to the common law forum with respect to the property now in question? It cannot be pretended that this receiver could not have brought replevin for this property; why is he to be confined to such action, and to be excluded from taking his case before a tribunal that is competent not only to adjudge with regard to his right to the

property, but also to remove from it those pretended and fraudulent claims, which, so long as they exist, must of necessity, render it unsalable in his hands? I can see no propriety in limiting the receiver to a court that has not the power of dispensing in this group of cases full or adequate relief. Nor does the fact that it is presumable that the judgment creditor is competent to clear away these fraudulent instruments by a proceeding in equity in his own name, present any serious objection to the adoption of the present course. Granting such power to exist, it does not follow that the receiver is not endowed with a similar power. Such an alternative authority is not uncommon in these procedures. In *Parker* v. *Browning*, 8 *Paige* 388, Chancellor Walworth, in speaking of the course to be taken when property which is claimed by a receiver appointed by the chancellor, is in the hands of a third party, who claims the right to retain it, says: " The receiver must either proceed by suit, in the ordinary way, to try his right to it, or the complainant should make such third person a party to the suit, and apply to have the receivership extended to the property in his hands." A little examination of the decisions will, I think, show a number of instances in which these ordinary receivers have been the actors in judicial proceedings which were designed to bring the sequestered property more completely under their control and to cut off from it pretended claims or liens. It is true that such a receiver is not at liberty to bring or defend actions, or do any act that he may deem beneficial to the estate, without the special leave of the court; but such special leave is not more than an equivalent of the authority given in the present statute to sue for the property discovered. This statute gives its receiver the authority to take the property into his possession, and, if need be, to recover it by suit, and then to sell it; and it would consequently appear to be an unreasonably narrow construction to say that the incidental power of putting such property in a salable condition is not imparted. This bill, in my judgment, should not have been dismissed.

Nor does it seem to me that anything worth the having would be gained by laying down the rule that the judgment creditor alone must be the complainant in a suit of this kind. There would be a change of form and nothing more, for it is obvious that the receiver would, of necessity, have to be a party to such an action, for how otherwise could the court deal with the equities of the case? In a proceeding of this nature, the court is not asked to set aside these instruments of sale and encumbrance absolutely, but only in part—that is, so far only as to postpone them to the right of the judgment creditor. If a sale should be ordered, the residue of the proceeds after the payment of the debt of the creditor, would belong to the vendee or mortgagee, and a court of equity, whose cardinal rule it is to do justice to all parties, would not make a decree that this property should be sold free of those contested claims, unless it could securely provide for the protection of the rights of such vendee or mortgagee. This could not be done by ordering the property sold by a receiver not appointed by the court and not made a party. It would seem, therefore, that even if the creditor should have proceeded in this case in his own name, he would have been obliged to bring in as a party his own receiver. There seems to be a gain in simplicity of procedure by permitting the receiver to stand as the actor. All idea that such a power is liable to be abused is dispelled by the fact that this officer is put, by the statute, under the control of the court that gave him his appointment.

It will be found, upon looking into the books, that this definition of the authority of these statutory receivers is in plain accordance with the decisions on the subject. Notably so in the judgment in the case of *Porter* v. *Williams & Clark*, 5 *Seld.* 142. There, under a statute authorizing, in proceedings supplementary to execution, a receiver to be appointed, it was held, upon general principles, that such officer could maintain a suit to set aside an assignment of property in fraud of his creditors. The judicial reasoning

leading to this adjudication is very closely applicable to the facts embraced in the present inquiry. See also to the same effect the case of *Bostwick* v. *Menck*, 40 *N. Y.* 383. These cases entirely explode the opposite view taken by the earlier cases in some of the courts of New York. The following cases stand on the same footing : *Hamlin* v. *Wright*, 23 *Wis.* 491; *Carr* v. *Hilton*, 1 *Curtis C. C.* 230'; *Kennedy* v. *Thorp*, 51 *N. Y.* 174; *High on Receivers*, p. 307 § 454.

The decree should be reversed.

Decree unanimously reversed.