This bill seeks a discovery and an accounting in aid of an execution on a judgment at law and grows out of the following circumstances:
Shortly after the world's championship baseball series, in October, 1927, one William H. Truby conceived the idea of staging a game of baseball at Asbury Park, New Jersey, in which two professional players, famed for their prowess on the diamond and especially at the bat, would play star, if not opposing roles. The stars selected were Babe Ruth, otherwise *Page 316 
known as "the Bambino" and "The King of Swat," and Lou Gehrig, the incomparable Babe's closest rival, and sometimes known as the "Ex-collegian." Needing space for the exhibition, Truby arranged through the defendant Lyons with the local board of education, of which Lyons was secretary and business manager, for the use of the high school athletic field, for which use the board of education was to receive ten per cent. of the proceeds of the game. Out of an abundance of caution, it was stipulated that the board of education was to collect all admissions, gate receipts,c. Then, with a reckless disregard of consequences, Truby picked October 13th, 1927, as the date for the game. One important condition of the arrangement for the game was the payment to Ruth and Gehrig by Truby of $2,500 in cash on the "pay as you enter" plan. On the fateful day, notwithstanding the pleadings, threats, yells and catcalls of the assembled fans, the stars refused to present themselves before the admiring throng until the condition just referred to had been complied with, and remained in the sumptuous seclusion of their hotel until the necessary arrangements were accordingly made. Demand being made upon Truby for this money, he confessed that he was without funds to respond and a hasty count of the receipts for admissions was begun. At this juncture the sheriff, the complainant in this suit, armed with an execution on a judgment at law theretofore obtained by one Umberto Grieco against William H. Truby and John Borden, and who had for sometime stood by watching the proceedings with complacency, approached the defendant Lyons and then and there levied upon the moneys in his hands as the property of the aforesaid Truby. Consternation, disappointment and a variety of emotions reigned supreme and it looked as though the fans would not realize their ambition of seeing these "Siamese twins of swat" in action; but the truth of the adage that "every cloud has its silver lining" was demonstrated by one Donaghy, who, with more generosity than discretion, volunteered to supply the silver lining and drew his check for the necessary $2,500 to the order of the business manager of the star players, and the game proceeded, but with what *Page 317 
result in the way of hits, errors, home runs or score, history does not record. This advance by Donaghy was apparently made, however, without any clear or definite idea as to how it was to be repaid, if at all. At the end of the game the receipts being insufficient to meet the expenses, pay the amount claimed by the sheriff and the amount advanced by Donaghy, the defendant Lyons very properly refused to part with the funds in his hands. A rule was thereupon issued out of the Monmouth county common pleas requiring the defendant Lyons to show cause why he should not pay to the sheriff the amount due under the levy out of the funds in his possession. But on the return of this rule, Lyons denied that he had in hand any funds of the judgment debtor and the rule was discharged. Thereupon this bill was filed.
In defense, it is claimed that when demand was made upon Truby for the $2,500 guarantee he "threw up his hands," and that the board of education then had either to return the admission receipts or find someone to take Truby's place, and that the latter course was pursued, Donaghy substituting for Truby; that this was a new arrangement between the board of education and Donaghy for the game, and one in which Truby had no interest. But the proof falls far short of any such arrangement. Donaghy himself did not testify. The secretary and the member of the board of education who did testify specifically said that no arrangement such as has been suggested was made with Donaghy. There seems to have been no very definite understanding by anyone as to just what the arangements were under which Donaghy advanced the money. It seems to have been assumed by Lyons and Donaghy, at least, that Donaghy would take Truby's place; but in my judgment what happened was that Donaghy, seeing the game was likely to go by default, wanted to save the assembled fans from disappointment and allowed his business judgment to be overwhelmed by his enthusiasm. He may have assumed, although he had no right to do so, that the moneys in Lyons' hands and the further gate receipts would be applied to his reimbursement. But this assumption overlooked the fact that the game was arranged by Truby, that *Page 318 
the board of education was acting as his agent in the collection of the gate receipts, and that Truby had a ninety per cent. interest in the moneys held by Lyons which had been attached by the sheriff at the suit of intervening third parties. Truby's interest in this fund was not terminated by anything which Donaghy did, and whatever rights, if any, Donaghy succeeded to were subject to the levy.
The defendants also claim that this court has no jurisdiction in this matter as the remedy at law is complete. The complainant bases his right to relief in this court primarily on sections 5 and 7 of chapter 115 (P.L. 1915), which is a supplement to "An act respecting executions" (Revision of 1874); and secondly, upon the general equity jurisdiction of this court in matters of accounts between principal and agent, profit sharers, fiduciaries, c. It seems plain that the remedy at law here is inadequate, that remedy under the act referred to having been exhausted, and it being at least questionable if the remedy provided by the statute is not, at law, exclusive. The sheriff here, by virtue of sections 5 and 7 of the act already referred to, may take such action, either at law or in equity, as either the defendant in the execution or a receiver of such defendant would be entitled to. The powers of a receiver under such circumstances are indicated by section 26 of the act. 2 Comp.Stat. p. 2251. As to the right of a receiver to maintain a bill in this court see Miller v. MacKenzie, 29 N.J. Eq. 291.
It will be noted that no discovery is sought here against the judgment debtor but only against the defendants who are alleged to have moneys of the judgment debtor in their hands. Lyons took refuge behind a technicality in the proceedings at law, but it is insufficient to save him here. As to the right of the judgment debtor to maintain a bill for an accounting against the defendants, see 5 Pom. Eq. Jur. 2359, 2360. As already indicated, the complainant here succeeds to the judgment debtor's rights in this respect.
I will advise a decree directing the defendants to pay the complainant the amount due under the existing levy. *Page 319