The Chancellor.
The bill is filed to foreclose a mortgage for $1000, given by William Robinson to Andrew Robinson, and by him assigned to th¿ complainant. The mortgage was executed and recorded on the first of October, ■1856, and was assigned to the complainant on the 11th of June, 1857, to secure the sum of $500, and by a subsequent assignment, acknowledged and recorded on the 9th of November, 1859, for the further consideration of $500, was unconditionally assigned to the complainant.
After the recording of the mortgage, but before its assignment to the complainant, judgments were recovered against the mortgagor, and the mortgaged premises levied upon by virtue of executions issued thereon. On the 21st of January, 1861, the premises were sold by virtue of these executions, *215 and were subsequently conveyed to William Dunham, the purchaser at the sheriff’s sale. Answers are filed by one of the judgment creditors and by the purchaser at the sheriff’s sale alleging fraud in the inception of the mortgage, knowledge of the fraud by the assignee, and want of consideration for the assignment.
The answers allege, and the evidence proves that the bond and mortgage in their inception were fraudulent. They were given without consideration for the purpose of protecting the mortgagor’s property from his creditors. The fact is proved by the express testimony of the mortgagor and mortgagee, whose evidence in this particular is uncontradicted. Upon this point there is no controversy.
The answers further allege that the complainant took the assignment with full knowledge of the fraud, and without paying any consideration therefor. The complainant claims to be a bona fide purchaser for value without notice of the fraud. The burthen of proof is upon the defendants. The mortgagor testifies that, prior to the assignment, he informed the complainant that the mortgage was given to protect his-property from his creditors, and that the assignment was purely voluntary. Both facts are expressly denied by the complainant in his evidence. It is clearly shown that at the date of the first assignment, which was in the nature of an hypothecation of the mortgage to secure the payment of $500, the complainant gave to the assignor his check upon the State Bank at New Brunswick for $500; that on the same day the check was presented and paid to the assignor, and by him paid to the mortgagor. The mortgage thus assigned was held by the complainant as security for the $500 advanced until the 9th of November, 1859, and one year’s interest paid on the sum advanced. At or about the time of the absolute transfer of the mortgage, it is shown that Dan-bury, the complainant, became security to Stout & Company for the further sum of $500, for goods to be furnished to the mortgagor. Upon the faith of this guaranty, goods to the amount of $497 were furnished to Robinson, and the amount *216 paid by the complainant. The account given by the complainant of the transaction is, that the first sum of $500 was advanced by him upon the understanding that out of that sum he should be paid a debt due him from Robinson, the mortgagor, of $100, which was the inducement for the loan, and that the balance was applied for and taken by Robinson, to enable him to go into business after his failure; and that the second advancement, sixteen months afterwards, was made at Robinson’s request, to enable him to continue his business. All the circumstances tend to corroborate the truth of this statement. It is shown that, soon after the first assignment, a shop was fitted up in Robinson’s house, and business transacted there in the name of his son, and that at the date of the second assignment he obtained credit to the amount of $500, in the transaction of his business, upon the faith of the complainant’s guarantee. The conduct of the parties and the terms of the assignments are strictly in accordance with this view of the case. Both assignments were acknowledged, and immediately recorded. The second assignment is absolute. The first assignment is conditional, and drawn with great particularity. It recites that $500 is due from the assignor to the assignee for money lent, which, by agreement between the parties, was to be repaid on the first of May, in five successive years, with interest for the" first year on $500, and annually thereafter on the amount remaining unpaid, with the privilege, on the part of the assignor, of paying the entire amount at his option at any time before the last instalment became due. It further provides, that in case Danbury collected the money due on the mortgage, he should, after paying the $500 advanced by him, with, all costs and charges, pay the surplus, if any, to the assignor. This arrangement gave the control of the mortgage and perfect security to the assignee. It protected the interests of the assignor. It gave ample time and opportunity, to the party for whose benefit the loan was made to repay the loan out of the proceeds of the business. This is precisely such an arrangement as would naturally have been *217 made by tlie parties if acting in good faith, each desirous of protecting his own interest. It would scarcely have been resorted to if the whole transaction was a sham. The only explanation that Robinson gives of it is, that it was all devised the more effectually to cloak the fraud. This is possible, but highly improbable. The evidence satisfactorily establishes the fact, that the complainant advanced the full amount of the mortgage debt as a consideration for the assignment.
Was the complainant a bona fide purchaser without notice of the fraud ? If he was not, if he took the assignment with knowledge of the fraud, the fact that he paid full consideration will not aid him. Robinson swears that Danbury had express notice of the fraud; that he told him, before either of the assignments were executed, that the mortgage was made without consideration for the purpose of protecting the property of the mortgagor from his creditors. This Dan-bury denies, and testifies that he never heard or knew of the fraud until Danbury was about to make sale of Robinson’s property under execution, long after the last assignment. The fact was then, for the first time, made known to him by Robinson, and disclosure was threatened if Danbury persisted in pressing his execution. Upon which side of this conflicting statement lies the probability? If the assignment to Danbury was purely voluntary, if he accepted the assignment for Robinson’s benefit merely to aid him in defrauding his creditors, it is highly probable that Robinson informed him of the real truth of the case. He must have done so to have given Danbury an inducement for his conduct! But the fact is established that Danbury advanced a full consideration for the mortgage; that ho took the assignments as security for the moneys advanced, and that they were made and placed upon record at the time of making the loans. It is not probable, while Robinson was seeking to obtain from Danbury a loan, and offering him security for its repayment, that he would have told him that the security offered was fraudulent and worthless.
*218 The evidence is not sufficient to impeach the title of the complainant as a bona fide purchaser of the mortgage without notice of the fraud.
It is further urged, that if the complainant be a bona fide purchaser of the mortgage without notice, his title is nevertheless invalid as against the creditors of the fraudulent mortgagor. It was so held by the Supreme Court of Connecticut, in Preston v. Crofut, 1 Conn. R. 527, and by Chancellor Kent, in Roberts v. Anderson, 3 Johns. Ch. R. 371. These cases distinguish between the operation of the statute 27 Eliz., ch. 4, intended to protect bona fide purchasers, and the statute 13 Eliz., ch. 5, made to protect creditors. They admit that, under the latter statute, a purchaser for a valuable consideration without notice from a fraudulent grantee will be preferred to a subsequent purchaser for a valuable consideration from the grantor. The first purchaser has in such case the preference whether he takes from the fraudulent grantor or grantee. But they maintain that, under the latter statute, a bona fide purchaser without notice from a fraudulent grantee acquires no title by the conveyance against the creditors of the fraudulent grantor. The distinction is not well founded.
The decision of the Chancellor in Roberts v. Anderson was unanimously reversed by the Court of Appeals, and the distinction made by the Chancellor in the construction of the two statutes declared to be without foundation. Anderson v. Roberts, 18 Johns. R. 515.
The subject is very fully examined by Chief Justice Spencer, in delivering the opinion of the Court of Appeals, and has been elaborately discussed and definitively settled in numerous other cases. Bean v. Smith, 2 Mason 252; Somes v. Brewer, 2 Pick. 198; Oriental Bank v. Haskins, 3 Metc. 332; Green v. Tanner, 8 Metc. 422; Dugan v. Vattier, 3 Blackf. 245.
" It is now the settled American doctrine that a bona fide purchaser for valuable consideration is protected under the statutes of 13th and 27th Elizabeth, as adopted in this country, whether he purchases from a fraudulent grantor or a *219 fraudulent grantee; and that there is no difference in this respect between a deed to defraud subsequent creditors and one to defraud subsequent purchasers. They are voidable only, and not absolutely void.” 4 Kent’s Com. 464.
The rights of the bona fide purchaser from the fraudulent grantee are not impaired by the fact that judgments were recovered by the creditors against the fraudulent grantor prior to the conveyance by the fraudulent grantee. The judgments constitute no lien upon the legal title of the grantee.
The title acquired by the purchaser, according to every legal test, was perfect. A concealed defect or secret equity, arising from the conduct of those who previously owned the property, of which the purchaser had no notice, cannot bo set up against him. Fletcher v. Peck, 6 Cranch 133; Anderson v. Roberts, 18 Johns. R. 531.
The complainant is entitled to a decree according to the prayer of his bill. A reference will be ordered to ascertain the amount due upon the mortgage.