HUGH S. KINMONTH

*v.*

ANDREW J. WHITE et al.

HONORINE HANDLEY

*v.*

ANDREW J. WHITE et al.

ASBURY PARK AND OCEAN GROVE BANK

*v.*

ANDREW J. WHITE et al.

WILLIAM PITTENGER

*v.*

ANDREW J. WHITE et al.

NAVESINK NATIONAL BANK OF RED BANK

*v.*

ANDREW J. WHITE et al.

[Submitted April 19th, 1901.   Decided April 20th, 1901.
Filed June 4th, 1901.]

1. Where creditors obtain judgments and make levies, and then bring suits to set aside fraudulent conveyances, which are void as to them all, their priorities in the property conveyed are in the order of their levies, without regard to the order in which they filed bills to set aside the conveyances; the assets being legal assets.

Kinmonth v. White.

2. The priorities of creditors who obtain judgments on which executions are issued and levies made on land, conveyances of which they then sue to set aside as fraudulent, are not affected by the fact that in certain cases the executions were returned, with the levies annexed, to the effect that they were unsatisfied.

3. In order to sustain a bill to set aside as fraudulent a conveyance of land by a debtor made before judgment recovered, and which has been levied upon by execution upon such judgment, it is not necessary to have the execution returned unsatisfied.

4. The retention of a writ of execution, after its return day, by the sheriff is not necessary in order to enable him to make sale by virtue of it after the return day, and such retention is improper and unwarranted.

On motion to settle order of priorities between judgment creditors.

*Mr. Samuel A. Patterson,* for the creditors who filed the first bills.

*Mr. Frank Durand,* for the other creditors.

PITNEY, V. C.

These were five separate bills filed to set aside certain conveyances made by a judgment defendant for the purpose, as alleged, of defrauding the judgment creditors. No order of consolidation was made, but the causes were, by consent, tried together, and an opinion rendered which declared one conveyance fraudulent *in toto,* and the others fraudulent in part, as reported in *47 Atl. Rep. 1.*

The order of priority of the judgments was as follows:

1. Pittenger's judgment, recovered April 8th, 1898.

2. The Asbury Park and Ocean Grove Bank's judgment, recovered April 11th, 1898; and another judgment, in favor of the same party, recovered April 26th, 1898.

3. Kinmonth's judgment, recovered April 30th, 1898.

4. Handley's judgment, recovered June 8th, 1898.

5. The Navesink National Bank's judgment, recovered June 15th, 1898.

Executions were issued on these judgments and levies made at once, so that the order of the levies is precisely the same as that of the judgments.

The several bills were not filed in the order in which the judgments were recovered. The first bill was filed by Kinmonth, whose judgment was third, on May 9th, 1898; the second bill was filed by Handley, whose judgment is fourth, on June 22d; the third bill was filed by Pittenger, who had the first levy; the fourth bill was by the Asbury Park and Ocean Grove Bank, whose levy is second, and the Navesink National Bank, whose judgment is the fifth, filed the fifth bill.

Two grounds are taken by counsel for one or another of the creditors for disturbing the order of priorities as established, under our statute, by the date of the levies.

In the first place, it is argued that the party who first files his bill is entitled to be first paid; that he thereby shows his diligence and acquires the first lien on the assets sought to be reached by the aid of the court.

I am unable to adopt that view. The rule invoked applies only to bills filed to reach equitable assets, by which is meant assets not subject to levy. In this case the title, shortly before the judgments were recovered, was in the judgment debtor, and he, as has been found by the court, conveyed the premises for the purpose of defrauding his creditors. There was no room for distinguishing between the creditors and holding the conveyances good as against one and not good as to another. They were void, both at law and in equity, as to all the creditors, and left the land subject to levy. It was at the option of the judgment creditors either to proceed at law and sell the land and test the validity of the conveyances by an action of ejectment, or to first file their bills in this court to procure a declaration that the conveyances were void, and then to sell the lands for the payment of the debts. The latter is the usual course in New Jersey, and much the more convenient and equitable, because it insures that the result of the sale will be a title which will not be subject to litigation. It was found in practice that in such cases sales by the sheriff under a judgment and execution, before any declaration had been made by a competent court as

Kinmonth *v.* White.

to the character of the previous conveyance by the judgment debtor, produced only a nominal sum; and then, if the purchaser procured his title to be validated by a judgment in ejectment, he still held his judgment unsatisfied against the judgment debtor, although he may have obtained value enough in the land to have paid it. And if, in such case, after purchasing at sheriff's sale, without resorting to ejectment, he came into this court, as he might do, to have the title derived under the sheriff's deed declared valid, this court granted relief only upon condition that he should give credit on his judgment for the fair value of the land.

But the fact that the judgment creditor comes into this court to have the conveyance by the debtor declared void before proceeding to sell under his common law judgment, does not alter his *status* or the priority of his lien under his execution. The proceeding is strictly in aid of the judgment at law, and the asset is not what is known as an equitable asset. It is a legal asset, because subject to levy by execution upon a common law judgment. The case of a debtor paying the consideration-money for land and procuring the title to be vested in a third person for his benefit stands on a different basis. In such case the land is not subject to levy by execution against the real owner, and the interest of the judgment debtor can only be reached by a suit in equity, and is, strictly speaking, an equitable asset.

I hold, therefore, that the point just taken is not good, and that the filing of a bill in this court by a judgment creditor, with a levy subsequent to another who subsequently files his bill, does not alter the statutory priority, and the judgment creditors are entitled to hold their levies according to the priorities at law.

These positions are so well settled in New Jersey that I do not deem it necessary to cite authorities in their support. I have examined the authorities cited by counsel in this and New York State. They were all cases of bills filed to reach equitable assets not subject to levy. Such was *M'Dermutt* v. *Strong,* decided by Chancellor Kent, reported in *4 Johns. Ch. 687.* There goods and chattels had been conveyed and delivered to an assignee or trustee in trust to sell the same, and out of the

Kinmonth *v.* White.

proceeds to pay certain debts, and the remainder to pay back to the assignor. Judgment was recovered against the assignor after the assignment and delivery, and it was held that the goods or their proceeds in the hands of the assignee could not be reached by an execution at law, and that the proper remedy was by bill in equity, and that the creditor who filed the first bill had the first lien. .That was clearly a case of equitable assets. So in *Beck* v. *Burdett, 1 Paige 305; Eameston* v. *Lyde, 1 Paige 637.* There were in those cases no lands or goods subject to levy. So with regard to the decision of Chancellor Walworth, when circuit judge, in the case of *Weed* v. *Pierce,* reported in *9 Cow.* (at *p. 722*); also, *Corning* v. *White, 2 Paige 567;* and such was the case of *Warden* v. *Browning, 12 Hun 497.*

The only case that appears to be in conflict with the rule I have above stated is *Miller* v. *Sherry, 2 Wall. 237.* There a debtor had conveyed away his real estate, situate in Illinois, under such circumstances as to render the conveyance fraudulent and void as against his creditors. Two different creditors obtained judgments, and brought a suit in equity to set aside the conveyance. Neither of them had any levy on the land, or any lien by virtue of their judgments. Why this should have been the case does not clearly appear, but it may be inferred that something in the statutes or in the practice of the courts of Illinois differentiated it from the law and practice in this state. The judgment creditor who was second in order of priority on his judgment obtained the first order for sale and conveyance of the lands. The other one obtained the same sort of an order of later date than the other; and it was held that the title obtained under the proceedings of the second judgment creditor was the better title. The case is not a precedent here.

The next point made is that certain of the complainants procured the sheriff to make a return on their executions, with the levies annexed, to the effect that the execution was unsatisfied. I have not before me the precise language of the sheriff's return, but I understand the fact to be that the levies were actually returned with the writs.

The notion of the counsel of the plaintiffs who took that

course was, I infer, that they could not proceed by bill in this court without having the execution returned unsatisfied. This was a clear mistake. No such return was necessary in the absence of a levy on chattels. Nor are the other contesting complainants holpen by the fact that they allowed their executions to remain in the sheriff's hands with the levies annexed. Just here there seems to be another mistaken notion, somewhat prevalent. It seems to be thought that a sheriff cannot execute a common law writ after he has returned it to the clerk's office as commanded by its terms. This is a mistake. It is not necessary for a sheriff, in order to execute a common law writ of execution, to have the writ in his hands at the time he makes sale under it. He has, in fact, no right to retain the writ after the return day mentioned in it. He must make his levy before that time, and it is his duty to return the writ with the levy annexed on the return day named, and proceed to execute it as the plaintiff's attorney shall direct. The writ is a record and file of the court, and it, as well as the judgment behind it, is his authority for proceeding as much after its return as it would be had he not returned it. The non-return of such writs according to their command has led to much inconvenience.

I do not see how a return of a writ with levy annexed, with a declaration by the sheriff that the same is unsatisfied, can be considered as an abandonment of the levy.

The levy itself is not a satisfaction of the writ, as I understand the law, except to the extent of the value of the personal property levied upon; and it was usual years ago—whatever it may be now—for the sheriff to annex to his levy the words "value one dollar," or "six cents," or some other nominal sum, so as not to be held responsible beyond that value for the goods in his hands. So it seems to me that a return of a writ, with levy annexed, before sale, is necessarily a return of the writ, in one sense at least, unsatisfied.

This is peculiarly true as to a levy upon land alone, which is the case in hand. The general rule that a levy upon a sufficient amount in value of chattels may, or should be, treated as a satisfaction of the judgment (*Johnson* v. *Tuttle, 1 Stock. 365; Banta* v. *McClennan, 1 McCart. 120*) rests upon the notion

that, in such a case, the sheriff takes actual manual possession of the chattels and becomes invested with the title to the same. But even in such a case the presumption of satisfaction may be rebutted, as between the parties, by showing that the plaintiff in execution never really had any benefit from the goods, but, on the contrary, that the defendant in execution had the benefit. Be that as it may, no such presumption of payment results, under our statute, from a mere levy upon land. The levy vests no title in the plaintiffs or the sheriff in the land levied upon, but merely establishes the lien of the judgment as against other judgments, and serves as a warrant to the sheriff to sell the same. Such seems to be the weight of authority. *Freem. Exec.* § *282; Freem. Judg.* § *474.*

The result is that the proceeds of the sale in this case must be divided among the judgment creditors according to the order of their levies, which is in accordance with the dates of their judgments.