Complainant's bill is to quiet title, under the statute. The jurisdictional facts are duly proven and not contested. Indeed, none of the facts are in dispute.
On and prior to October 18th, 1924, Charles H. Davison owed four debts of several thousand dollars each — one to defendant First National Bank of Hightstown, one to defendant Farmers' National Bank of Allentown and two to complainant, Swift 
Company. On that day, his wife joining, he conveyed his farm — located part in Mercer county and part in Monmouth county — to an intermediary, Morrison, who immediately reconveyed to Davison and his wife as tenants by the entirety.
On November 17th, 1924, the Hightstown bank recovered judgment in the supreme court against Davison, issued execution *Page 419 
to the sheriffs of the two counties, and the latter levied on the right title and interest of Davison in the farm.
November 18th, 1924, the Allentown bank recovered judgment in the supreme court against Davison, issued execution and had levies made in the same way.
A month later, on December 24th, 1924, complainant, Swift 
Company, recovered judgment in the United States district court on one of its claims and delivered execution to the United States marshal, but no levy was then made. Two months after that, complainant recovered its second judgment, February 23d 1925, but execution was not delivered until December 2d 1925, on which date levy was made on the same farm by the United States marshal under both of complainant's executions, and this was duly followed by sale (February 16th, 1926) and conveyance (March 22d 1926) to complainant. Complainant then sued Davison and his wife in ejectment, recovering judgment for possession in March, 1927, and was actually put into possession by the sheriff and has since continued in possession.
In July, 1926, the sheriff of Mercer sold the right, title and interest of Davison in so much of the farm as lay in Mercer county, to the Hightstown bank and the Allentown bank, for $1,500. This sale was under the executions and levies hereinbefore mentioned, and was followed by conveyance accordingly, in November, 1926. No sale has been had of the portion of the farm in Monmouth county, under these executions and levies, but the latter are still in force and effect except as they may have been affected by the marshal's sale and conveyance under the Swift judgments.
Swift Company, after the recovery of its judgment, filed its bill in this court (February 16th, 1925), to set aside the conveyances by Davison and Morrison, as in fraud of creditors; and obtained decree December 5th, 1925, declaring said conveyances null and void as against the Swift Company judgment. The banks were not parties to this suit; but on November 23d 1925, the Hightstown bank filed its suit to set aside the conveyances as in fraud of its judgment, and obtained decree February 9th, 1926, declaring them null and void as against its judgment. *Page 420 
The present bill seeks a determination of the claim of ownership by Swift Company as against the claims of the two banks (which latter were not parties to the ejectment suit by Swift Company against Davison).
Swift Company (complainant) admits that if the debtor Davison had not made the conveyances of October, 1924, the priorities of the parties to the present suit would have been fixed and determined in the order of the respective execution levies — in which those of the banks were first. It contends, however, that by reason of Davison's said conveyances, he was not the holder of the legal title to the lands at the time of the execution levies, and the latter affixed no lien upon the premises; that the said conveyances, though fraudulent, were voidable only, and not void, and hence were valid and effective until set aside by decree to that effect.
With respect to lands, the legal record title to which is in the judgment debtor, there is no question about the respective priorities. The priority of the liens of judgments at law is determined by the chronological order of the levy of executions on such judgments. The holder of that judgment on which execution has first been levied on the lands thereby obtains, and maintains, priority of lien and interest in such lands. That judgment which obtains the first levy of execution upon the land "acquires a priority of lien which cannot be affected by any execution subsequently issued, nor by any mode in which the land may be sold." Clement v. Kaighn, 15 N.J. Eq. 47 (at p. 58), approved and reiterated by the court of errors and appeals inLippincott v. Smith, 69 N.J. Eq. 787; 64 Atl. Rep. 141. InDen v. Young, 12 N.J. Law [*]300, the title of the purchaser at sheriff's sale in 1828 under execution levied in 1820 was held paramount to that of purchaser at sale in 1822 under execution levied in 1821. A sale under junior execution conveys title subject to the execution antecedently levied. See, also, Moffett v. Den, 6 N.J. Law 228.
This is not controverted by complainant. It results therefrom that complainant can in no event be entitled to decree establishing title in it paramount to all claim of interest by defendants — for at the time of each of the several judgments *Page 421 
and execution levies the judgment debtor had a record legal title of a legal interest in the land, to wit, his interest under the deed back from the intermediary (Morrison) to the judgment debtor and his wife as tenants by the entirety.
It is deemed, however, that the title of the defendant bank is not limited to such interest as it might acquire under sale of the interest of the judgment debtor as tenant by the entirety. Let us assume that the record legal title remained in the intermediary, Morrison, under the deed from the judgment debtor.
By statute (3 Comp. Stat. p. 2956) a judgment is a lien on the lands of the judgment debtor from the time of its entry; and as has been seen, the levy of execution under such judgment on the lands of the judgment debtor fixes the priority of the lien of that judgment.
The lands here in question admittedly were the lands of the judgment debtor prior to the deed from him to Morrison. If that deed was void, then the lands continued to remain, and still were at the time of the several judgments and levies, the lands of the judgment debtor; and the validity of the bank's judgment lien would be unaffected by the sale under complainant's judgment.
The Fraudulent Conveyance act (2 Comp. Stat. p. 2618 § 12) provides that a conveyance by a debtor with intent to delay, hinder or defraud his creditors, is "utterly void and of no effect," as to his creditors.
By the decree of this court in the suit of the bank against the judgment debtor, it was adjudged that the deed in question was
fraudulent as to the bank, and is "null and void as against the judgment and executions of the complainant (bank)." The sale and conveyance to the bank was under its original judgment and execution at law.
Likewise by the decree of this court in the suit of Swift 
Company against the judgment debtor, it was adjudged that the deed in question was fraudulent as to Swift Company, and null and void as against Swift Company's debt and judgment; and the sale and conveyance to Swift Company was under the original Swift Company judgment and execution at law. *Page 422 
Under the provisions of the Uniform Fraudulent Conveyance act (P.L. 1919 p. 500 § 9), "where a conveyance is fraudulent as to a creditor, such creditor, when his claim has matured, may * * *
"(a) Have the conveyance set aside * * * to the extent necessary to satisfy his claim, or
"(b) Disregard the conveyance and attach or levy execution upon the property conveyed."
Such was also the law in this state prior to the act of 1919. A judgment creditor, seeking to avail himself of property fraudulently conveyed by the judgment debtor, could either file bill in equity or he could treat the conveyance as void, levy execution on the property conveyed and sell the same as the property of the judgment debtor — taking subsequent proceedings either at law or equity to establish the fraudulent character and nullity of the conveyance and the consequent validity of the title of the purchaser at the execution sale. Mulford v.Peterson, 35 N.J. Law 127, and cases cited; Kinmonth v.White, 61 N.J. Eq. 358; 48 Atl. Rep. 952.
None of this indeed is controverted by the present complainant, except that its contention is that the fraudulent conveyance is not void but voidable. Based upon that premise it is argued that the lands are lands of the grantee and not the lands of the judgment debtor, until the decree adjudicating the conveyance void; hence that the lands not being lands of the judgment debtor at the time of the execution levy upon them by the bank, no lien upon them was thereby acquired by the bank; that complainant acquired an equitable lien on these lands by the filing of its bill, and that this lien was, and remained, the first and paramount lien on the premises, and the subsequent lien of the bank, acquired only on the filing of a similar bill by the bank, was cut off by the sale under complainant's decree.
Three cases are cited by complainant in support of its contention that the fraudulent conveyance is not void, but voidable. Hendricks v. Mount, 5 N.J. Law [*]738; Pillsbury
v. Kingon, 33 N.J. Eq. 287; Danbury v. Robinson, 14 N.J. Eq. 213.
Examination of those cases shows that no one of them supports complainant's contention — the first one indeed *Page 423 
is authority to the contrary for it holds as correct a charge to the jury in an action at law that if they believed a conveyance was fraudulent, then it was void as against creditors.
The statute says that a deed in fraud of creditors is "utterly void" as against creditors (with an exception protecting innocent purchasers). That the statute means "void" has been repeatedly held in many cases besides those cited in Mulford v. Peterson,supra. Kinmonth v. White, supra, deems it so well settled as to need no citation of authorities. If the conveyance is void, then the lands conveyed are still (as against the defrauded creditors) the lands of the judgment debtor — and the execution levy upon them is good and establishes the usual lien. The point would seem to be definitely established contrary to complainant's contentions, by the express statement of the court of errors and appeals in Ely v. Hertshorn, 93 N.J. Law 421 (at p. 423);108 Atl. Rep. 221. "A judgment creditor has the right to levy on and sell land that he claims to have been conveyed in fraud of his debt, but to maintain ejectment" (this was an ejectment suit) "to remove the conveyance and clear his title from it, he must prove the fraud, for it is never presumed."
The very point at issue in the instant case was before this court in Kinmonth v. White, supra, and was therein decided adversely to the contention of the present complainant. That determination therefore must be deemed dispositive and controlling in the present case — unless later overruled or modified. In that case several creditors separately recovered judgments against the same debtor and levied executions upon lands which had been conveyed away by the judgment debtor. Thereafter the several creditors separately filed bills to have the conveyance adjudged as in fraud of such creditor, and decrees were entered accordingly on each bill. Application was made to determine the order of priorities of the interests of the several creditors. The creditors who were respectively third and fourth in the order of their execution levies, had filed the first and second bills, and claimed that they were entitled to be first and second in priority of payment; but Vice-Chancellor Pitney decided against them, holding specifically that "the filing of a bill in this court by a judgment *Page 424 
creditor, with a levy subsequent to another who subsequently files his bill, does not alter the statutory priority, and the judgment creditors are entitled to hold their levies according to the priorities at law."
The situation in the present case is practically identical with the foregoing, in so far as complainant and the Hightstown bank are concerned. The only difference is that complainant did not levy execution on the lands until after the filing of both bills. This difference seems quite immaterial, certainly so far as benefiting complainant is concerned.
No case has been cited by counsel or found by the court, in which the determination in the Kinmonth Case has been overruled or modified, either in this court or the appellate court.
Dey v. Allen, 77 N.J. Eq. 522; 78 Atl. Rep. 674, is not in conflict (and expressly so states). That was a contest for surplus moneys (after foreclosure sale), between three judgment creditors of the mortgagor. The latter had conveyed his interest in the mortgaged premises shortly prior to the recovery of the judgments. Two only of the judgment creditors levied executions on the mortgaged premises. Only one of them (the one whose levy was second), filed bill in this court and obtained decree adjudicating the conveyance by the mortgagor fraudulent as to it. Neither of the others obtained any adjudication, either by suit in equity or ejectment or in any other wise, that the conveyance was fraudulent as to them. The creditor whose levy was second was held entitled to the fund, on the express ground that it, and it only, had established that the deed was fraudulent as to its debt.
Obviously a judgment creditor, in order to establish the validity of his execution lien upon premises conveyed away by the debtor and not standing of record in the debtor's name at the time of the levy, must somewhere and at some time, establish that the conveyance was fraudulent as to him, in order to establish that it was void as to him. Otherwise there is nothing to show that he has any interest in the premises.
To the same effect, and not other is the determination in Ely
v. Hertshorn, supra. There a judgment creditor (who had *Page 425 
not levied on the lands) filed bill to have his debtor's conveyance adjudged fraudulent and set aside — and obtained decree. Subsequent to the filing of this bill another creditor entered judgment, levied on the lands and sold them, but filed no bill. The purchaser later brought ejectment against the purchaser at the sale under the chancery decree. It was urged by the latter that the filing of the bill in equity gave the first creditor a lien which was superior to a subsequent judgment, levy and sale (a much stronger position than that of complainant in the present suit), but the court did not decide that question, resting its decision on the ground that there was no proof either in the ejectment suit itself or elsewhere that the conveyance was in fraud of the second judgment creditor.
Complainant places its main reliance on the case of Sitley Son v. Morris, 73 N.J. Eq. 197; 67 Atl. Rep. 789. That case, at first reading, seems to support complainant's position, and to be in conflict with the Kinmonth Case. A careful consideration, however, shows that this is not so. All that is decided is that a judgment creditor (who has not levied on the lands) who files a bill to adjudge a conveyance fraudulent as to his debt, obtains a lien on the lands prior to that of a subsequent complainant who obtains decree that the lands are in equity subject to the payment of his judgment against the grantor — notwithstanding that the second complainant is the first to issue execution on his decree. The adjudication is not on a contest between the holder of an execution levy under a judgment at law on lands previously conveyed by the judgment debtor, on the one hand, and a judgment creditor who has levied no execution but filed bill in equity, on the other: it is between two creditors who have filed separate bills in equity but neither of whom has a valid execution at law on the lands. The court says (at p. 199): "The complainant [Sitley] having filed its bill, its lien attached from that time, and its priority is not disturbed by any subsequent proceeding of like character" (i.e., Morris' bill).
It is true that in an earlier proceeding Morris had levied on and sold the lands under his judgment at law, subsequent to conveyance by the judgment debtor, and the court had held *Page 426 
that that sale (at p. 198) "was not effective for the reason that at the time the judgment was recovered the defendants [judgment-debtors] had no legal title to the property sold." This sounds like an adjudication that a judgment creditor cannot obtain a valid lien by execution levy on lands standing in the name of a grantee from the judgment debtor, notwithstanding the conveyance was fraudulent — but in fact it does not say, and does not mean, any such thing. All that it says is, that that particular execution levy was not effective against the lands previously conveyed by the judgment debtor — it does not say anything about such conveyance being in fraud of the creditor. Reference to the file in the cause discloses that which the published opinion fails to mention, to wit, that not only was there no proof, but that there was never even any claim by the judgment creditor, Morris, that the conveyance was fraudulent — not even in his subsequent bill in equity. The situation was that the judgment debtor had borrowed money from a building and loan association and instead of giving the latter a mortgage as security had given it a deed absolute in form but intended only as security. The judgment creditor, Morris, made no claim that the mortgage was a conveyance in fraud of him, but claimed only (and by his subsequent bill and decree established) that the deed absolute in form was in truth only a mortgage. His theory was, apparently, that since the deed was intended only as a mortgage, the grantor still had the legal estate commonly referred to as the equity of redemption (which would have been subject to execution on a judgment against him). Where the deed is absolute in form, however, the grantor retains no legal estate — his interest is only equitable. Williams v. Baker, 62 N.J. Eq. 563; 51 Atl. Rep. 201. (The judgment creditor Sitley claimed — and obtained decree — that the deed-mortgage was fraudulent as to him, Sitley.) Obviously, since under the statute a conveyance is void only if it be in fraud of creditors, the conveyance was not void as to the creditor, Morris (who neither proved nor claimed that it was fraudulent), and Morris' levy of execution was of no effect.
There is therefore, in this case, no conflict with, or modification of, the Kinmonth Case, nor in any other cases in this *Page 427 
state which have been cited by counsel or found by the court, and it must be held dispositive of the issue here between the liens of complainant and the Hightstown bank. As to that portion of the farm in Mercer county — the portion sold under the execution of the Hightstown bank, and purchased jointly by the Hightstown bank and the Allentown bank — the title of the defendant purchasers is good and free from any encumbrance in favor of the complainants, except as to taxes, as hereinafter mentioned.
As to the portion of the farm not yet sold under the execution of the Hightstown bank — the portion in Monmouth county — the complainant has title, but that title is subject to the prior lien of the execution levy of the Hightstown bank. It is not subject to any lien by virtue of the execution levy of the Allentown bank, because the latter has not proved either in this suit or elsewhere, that the conveyance by the judgment debtor, prior to that levy, was fraudulent as to it. Dey v. Allen,supra; Ely v. Hertshorn, supra.
Complainant claims that in the event that the question of title is determined adversely to it, it is nevertheless entitled to reimbursement for taxes paid by it, and for insurance paid by it. This claim would seem equitable and valid in so far as respects the payment of back taxes, assessed for the years prior to complainant's entry into possession of the lands. This sum was $509.25, paid by complainant in 1926. Complainant is entitled to lien for the repayment thereof, together with interest thereon. As to the taxes paid by it during the years it has had possession and enjoyed the rents and profits, it is not perceived that there is any ground, legal or equitable, upon which it is entitled to repayment. As to the moneys paid for insurance premiums, there is no proof that the insurance was in anywise for the benefit of defendants — that the policies comprised or included any liability by the insurance companies to anyone other than complainant itself. Hence it is not entitled to repayment for these premiums.
Some mention was made at the argument as to the possibility of an outstanding dower interest in Sarah Davison, the wife of the judgment debtor. She has no such interest. She released or barred her dower by the deed to Morrison. Dey *Page 428 
v. Allen, supra; Campbell v. Weber, 79 N.J. Eq. 519;81 Atl. Rep. 732; affirmed, 80 N.J. Eq. 553; 85 Atl. Rep. 225. Moreover the decree in the suit by the Hightstown bank provided that the sale under the bank's execution should be free of all claims of Sarah Davison.