**In the Matter of Irving SILVERMAN, Bankrupt.**

**In the Matter of Dorothy SILVERMAN, Bankrupt.**

**Howard A. GENZ, Trustee, Plaintiff,**

**v.**

**HALLMARK CARDS, INC., Lionel Solomon and Sheila Solomon, State of New Jersey, Beach Haven National Bank & Trust Co., and Gibson Greeting Cards, Inc., Defendants.**

**GIBSON GREETING CARDS, INC., Plaintiff,**

**v.**

**Edward A. GENZ, Trustee, Defendant.**

**HALLMARK CARDS, INC., Plaintiff,**

**v.**

**Edward A. GENZ, Trustee, Defendant.**

**Bankruptcy Nos. B–78–3121, B–78–3122.**

United States Bankruptcy Court, D. New Jersey.

Jan. 29, 1980.

---

**10.** 11 U.S.C.A. § 522(f)(2)(A) (1979).

Alvin Y. Milberg, P.A., by Alvin Y. Milberg, Asbury Park, N. J., for bankrupts.

Alan C. Sugarman, Asbury Park, N. J., for creditors.

Kinnear & Genz by Edward A. Genz, Manasquan, N. J., pro se, trustee.

## OPINION

AMEL STARK, Bankruptcy Judge.

A complaint was filed by the Trustee in Bankruptcy, Edward A. Genz, Esquire, for the purpose of selling real property, known as 45 Flipper Avenue, Manahawkin, New Jersey, free and clear of judgment liens claimed by defendant-creditors, Gibson Greeting Cards, Inc., hereinafter referred to as "Gibson", and Hallmark Cards, Inc., hereinafter referred to as "Hallmark". Creditors, Gibson and Hallmark, have counterclaimed and also filed complaints against the Trustee for the purpose of determining the validity of their liens and to establish the priority of their liens over the interest of the Trustee. Creditor-plaintiffs seek leave to proceed with sale of the above premises to satisfy their judgments against Bankrupts Irving and Dorothy Silverman.

The questions presented here are (1) whether the sheriff properly executed the

levy on real property before exhausting the personal property of the debtors, and (2) whether discovery may be held after a writ of execution has been issued.

The property in question has been sold by the trustee, subject to the alleged liens of Hallmark and Gibson, such liens, if valid, to attach to the proceeds of the sale. For the purpose of this opinion, Gibson and Hallmark will be treated as plaintiffs.

## FINDINGS OF FACT

1. On June 22, 1977, judgment in the amount of $10,503.71 was entered in favor of Gibson, against now-bankrupts Irving and Dorothy Silverman, by the Superior Court of New Jersey, Law Division, Ocean County. A writ of execution was subsequently issued on July 12, 1977 by the State court, but was returned unsatisfied.

2. On August 8, 1977, judgment for $43,670.43 was entered in favor of Hallmark now-bankrupts Irving and Dorothy Silverman, by the Superior Court of New Jersey, Law Division, Ocean County. A writ of execution was issued pursuant to this judgment on August 23, 1977, but was also returned unsatisfied.

3. On December 21, 1977, after the return of the original writs of execution, an Order compelling discovery of the Silvermans' assets was entered by the Honorable William E. O'Connor, Jr., Judge of Superior Court of New Jersey. Discovery was postponed at the request of defendant-debtors from January 26, 1978, until August 23, 1978.

4. On August 16, 1978, alias writs of execution were issued by the State court.

5. On August 23, 1978, Irving Silverman completed an interrogatory concerning his personal assets. He also attempted, because of the absence of his wife at the taking of the interrogatory, to complete the interrogatories on her behalf.

6. The interrogatories propounded made no reference to household furnishings, but did demand answers as to ownership of motor vehicles, boats, etc.

7. Levy was made on the real property of the Silvermans by the sheriff on August 28, 1978.

8. On November 29, 1978, the sheriff levied on the personal property of the Silvermans. The levy made by the sheriff revealed the presence of the following items on the premises of 45 Flipper Avenue, Manahawkin:

### Living Room

| | |
|---|---|
| 1 | Sofa |
| 2 | Chairs |
| 2 | End Tables |
| 1 | Coffee Table |
| 2 | Lamps |
| 1 | T.V., Sears |

### Kitchen

| | |
|---|---|
| 1 | Table |
| 4 | Chairs |
| 1 | Refrigerator, Sears |
| | Assorted pots, pans, flatware, silverware |

### Bedroom #1

| | |
|---|---|
| 1 | Bed |
| 2 | Dressers |
| 2 | Lamps |

### Bedroom #2

| | |
|---|---|
| 1 | Bed |
| 1 | Dresser |
| 2 | Lamps |

### Utility Room

| | |
|---|---|
| 1 | Washer, Sears |
| 1 | Dryer, Sears |

9. The matter before this Court resulted from the filing of Voluntary Petitions under Chapter III of the Bankruptcy Act (11 U.S.C. Chapter III, Sections 21–35) and Rule 103, Rules of Bankruptcy Procedure, by Irving and Dorothy Silverman, and they were adjudicated as Bankrupts on December 22, 1978. Schedules setting forth their assets and liabilities were filed at that time.

10. Order for First Meeting of Creditors for January 9, 1979 was set on December 26, 1978. First Meeting was held on January 9, 1979.

11. On January 9, 1979, Edward A. Genz, Esquire, was appointed Trustee in Bankruptcy. No bond was required.

12. On January 15, 1979, a summons and complaint was filed by Investors Savings & Loan Association to permit mortgage fore-

closure, returnable before the Court on February 20, 1979.

13. On February 20, 1979, the complaint of Investors Savings & Loan Association was adjourned until March 21, 1979. A consent judgment was subsequently entered on March 15, 1979, denying the complaint of Investors Savings & Loan Association to foreclose, and fixing a lien on the real property.

14. Orders of Discharge were entered by this Court on March 23, 1979, for Irving and Dorothy Silverman.

15. For the purpose of selling the aforedescribed premises, the Trustee filed a complaint against Hallmark, Gibson, and other defendants, which complaint ordered the defendants to prove liens prior to the sale of the tract in question. The complaint of the Trustee was returnable on April 23, 1979.

16. On April 24, 1979, both Gibson and Hallmark filed complaints to fix their liens, and for a judgment permitting sale of the real estate by them.

17. The Trustee contends that he, as trustee, representing judgment creditors, has a lien upon the assets of the Bankrupts as of the date of adjudication, pursuant to Section 70 of the Bankruptcy Act (11 U.S.C. § 110). He argues that since neither Gibson nor Hallmark had levied properly upon the real property of the Bankrupts, pursuant to New Jersey statutes, their liens were inferior to the lien of the Trustee. The Trustee alleged that the real property in question should be sold publicly.

18. Hallmark and Gibson claimed that their judgments against the Bankrupts created valid liens on the real property, and were prior to the interest of the Trustee for the reason that they were entered eighteen months before the adjudication of bankruptcy. The plaintiff-creditors allege that they made a "good faith" attempt to locate personalty of the debtor upon which they could levy before levying upon the real property. Even if their levies of execution were invalid, they further argue that the prior judgments created liens which are unavoidable by the Trustee.

## CONCLUSIONS OF LAW

### I

■ Section 2A:17–1 of New Jersey Statutes Annotated states that:

In every writ of execution which shall be issued against real estate, the sheriff or other officer to whom such writ may be directed shall be commanded that he cause to be made, of the goods and chattels in his county of the party against whom such execution issues, the debt, damages and costs or sums of money mentioned in such execution; and that, if sufficient goods and chattels of such party cannot be found in his county, he cause the whole or the residue, as the case may require, of such debt, damages and costs or sum of money to be made of the real estate whereof such party was seized on the day when such real estate became liable to such debt, damages and costs or sum of money, specifying the day particularly, or at any time afterwards, in the hands of any person then having the same.

Under this provision, the sheriff is clearly required to levy upon the goods and chattels of the debtor within the county to satisfy a judgment and costs. *Raniere v. I & M Investment, Inc.*, 159 N.J.Super. 329, 335, 387 A.2d 1254 (Ch.Div.1978). He may only execute against the real estate after a prior, *good faith* attempt to locate and levy upon personal property. (Emphasis mine). *Id.* at 337, 387 A.2d 1254. Material departure from the command of this statute renders the execution void. *Id.* at 336, 387 A.2d 1254 citing 5A *Thompson on Real Property* § 2751 (1957 and Supp.1977).

■ Section 2A:16–1, New Jersey Statutes Annotated, provides further that, "[n]o judgment of the superior court, law division, or of the county court, law division, shall affect or bind any real estate, but from the time of the actual entry of such judgment on the minutes or records of the court." Hence, a judgment docketed in Superior Court of New Jersey creates a lien on

all real estate of the judgment debtor located in New Jersey from the date the judgment is docketed. *In re Fornabai*, 227 F.Supp. 928, 930 (D.N.J.1964). However, a judgment creditor does not necessarily prevail over creditors who have obtained subsequent judgments, according to New Jersey Statutes Annotated § 2A:17–39.[1] Priority among judgment creditors is determined by the order of their levies of execution. *Burg v. Edmondson*, 111 N.J.Super. 82, 85, 267 A.2d 545 (Ch.Div.1970). *See also Swift & Co. v. First National Bank of Hightstown*, 114 N.J.Eq. 417, 168 A. 827 (Ch.1933). Judge Shaw noted, in *In re Fornabai*, supra, that this provision created "an exception to the Common Law rule of 'the first in time is the first in right.'" 227 F.Supp. at 931. But the levy of execution on lands of a judgment debtor pursuant to a judgment fixes the priority lien of that judgment. *Swift & Co.*, supra, 114 N.J.Eq. at 421, 168 A. 827.

 Section 70c of the Bankruptcy Act (11 U.S.C. § 110c) provides that:

The trustee may have the benefit of all defenses available to the bankrupt as against third persons, including statutes of limitation, statutes of frauds, usury, and other personal defenses; and a waiver of any such defense by the bankrupt after bankruptcy shall not bind the trustee. The trustee shall have as of the date of bankruptcy the rights and powers of: (1) a creditor who obtained a judgment against the bankrupt upon the date of bankruptcy, whether or not such a creditor exists, (2) a creditor who upon the date of bankruptcy obtained an execution returned unsatisfied against the bankrupt, whether or not such a creditor exists, and (3) a creditor who upon the date of bankruptcy obtained a lien by legal or equitable proceedings upon all property, whether or not coming into possession or control of the court, upon which a creditor of the bankrupt upon a simple contract could have obtained such a lien, whether or not such a creditor exists. If a transfer is valid in part against creditors whose rights and powers are conferred upon the trustee under this subdivision, it shall be valid to a like extent against the trustee. In cases where repugnancy or inconsistency exists with reference to the rights and powers in this subdivision conferred, the trustee may elect which rights and powers to exercise with reference to a particular party, a particular remedy, or a particular transaction, without prejudice to his right to maintain a different position with reference to a different party, a different remedy, or a different transaction.

Upon his appointment, a trustee in bankruptcy becomes vested with all rights of a judgment creditor armed with execution liens. *In re Ripp*, 242 F.2d 849, 850 (7th Cir. 1957). Moreover, federal courts recently have construed this provision (§ 70c) to mean that the trustee acquires the rights of a levying judgment creditor. *In the Matter of Blease*, 605 F.2d 97 (3d Cir. 1979); *Sampsell v. Straub*, 194 F.2d 228 (9th Cir. 1951), cert. denied, 343 U.S. 927, 72 S.Ct. 761, 96 L.Ed. 692 (1952); *In re Currie*, No. 75–1449 (Bankruptcy Court D.N.J. June 1, 1976); *In re Carnavale*, No. B–1107–70 (Bankruptcy Court D.N.J. July 14, 1972). In *Sampsell v. Straub*, supra, Judge Hastie, sitting on the Ninth Circuit by designation, noted in dicta that, "[t]he trustee unquestionably enjoys the rights of a creditor who has levied attachment or execution on the bankrupt's property." 194 F.2d at 231. The apparent

---

1. Section 2A:17–39, N.J.Stat.Ann., provides that:

Whereas, other judgments, and recognizances, besides those, or some of those, by virtue whereof the sale aforesaid was made, might affect the real estate so sold, if no provision be made to remedy the same, and whereas, the persons who have not taken, or will not take out executions upon their judgments, or recognizances, ought not to hinder or prevent such as do take out executions from having the proper effect and fruits thereof, therefore, in any such case, the purchaser, his heirs and assigns, shall hold the lands, tenements, hereditaments, and real estate by him or her purchased as aforesaid, free and clear of all other judgments and recognizances, whatsoever, on or by virtue of which no execution has been taken out and executed on the real estate so purchased.

intent behind § 70c (of the Bankruptcy Act) is to entitle the trustee to assert the same priorities against secret liens and unfiled or unrecorded mortgages as a creditor who had obtained a valid lien on the property in question by judgment, attachment or other process, could have asserted. *In re Rosenberg Iron & Metal Co., Inc.*, 228 F.Supp. 12 (E.D.Wis.1964).

In the present case, the sheriff levied first upon the realty of the debtors (now bankrupts) although they possessed items of personalty listed above. (See Findings of Fact, # 8, supra). Gibson and Hallmark allege that there was a good faith attempt made to locate debtors' personalty, but that debtors themselves precluded disclosure of their personal assets by continually postponing the discovery proceeding until August, 1978. However, it must be noted that the writs were obtained *before* discovery was held, thus before the personal assets of the debtors could be ascertained. Consequently, the sheriff executed upon the realty in question, 45 Flipper Avenue, Manahawkin, on August 28, 1978, ignorant of the existence of the personal furnishings of the Silvermans. Gibson and Hallmark could and should have waited until after discovery had been held to satisfy their judgments. There was no good faith attempt made by these creditors to locate personalty before levying upon the realty. Therefore, under *Raniere*, supra, the execution against the real property is void.

As described in § 70c of the Bankruptcy Act, supra, the trustee in the present case may be viewed as a judgment creditor with a valid levy which arose on the date of bankruptcy, December 22, 1978. The two creditors correctly argue that their judgment liens were still effective as of that date. But they had not validly executed upon the realty by December 22, 1978. A previous levy by the sheriff, made on August 28, 1978, was void because it preceded the levy on personalty, which occurred November 29, 1978. If the creditors had executed on the real property after November 29, 1978, and before December 22, 1978, they might have created a valid and prior interest in the real estate and might prevail over the trustee. In the present instance, however, the trustee is the only creditor considered to have levied properly upon the realty. Although he is effectively a "junior" judgment creditor here, he prevails over the prior judgment creditor because he properly executed first. *See, Burg,* supra.

## II

Procedures under the statutory writs of execution are governed by N.J.Court Rules, Rule 4:49–1 *et seq.* Along with the authority to issue a writ of execution, Rule 4:59–1(d) states that:

In aid of the judgment or execution, the judgment creditor or his successor in interest appearing of record, may examine any person, including the judgment debtor, by proceeding as provided by R. 6:7–2, or by these rules for the taking of depositions. If the deposition is taken on interrogatories, the notice of the taking thereof may contain a statement that the judgment debtor or deponent need not appear pursuant to the notice, provided before the time fixed therein, he serves upon the judgment creditor or his attorney answers under oath to the interrogatories served. The court may make any appropriate order in aid of execution.

And Rule 6:7–2(a) states that:

In aid of the judgment or execution the court may, upon the filing by the judgment creditor or his successor in interest (if that interest appears of record) of a petition verified by him or his agent or attorney stating the amount due on the judgment, make an order requiring the judgment debtor or any other person to appear and make discovery on oath concerning the judgment debtor's property before a judge or on [sic] attorney of this State designated in such order, at a time and place therein specified. The specified place shall not be changed nor shall the time be changed for more than 2 weeks. No more than one hearing of the debtor and one additional hearing of any other person may be held without further court order.

Rules 4:59–1(d) and 6:7–2(a) of the New Jersey Court Rules are available to a judgment creditor to assist him in locating assets upon which a writ of execution can be issued. *Davis Acoustical Corp. v. Skulnik*, 131 N.J.Super. 87, 92, 328 A.2d 633 (App.Div.1974). He may also discover whether assets of the debtor have been fraudulently transferred or are otherwise beyond the reach of the execution writ. *Id.* at 92, 328 A.2d 633.

In the present case, writs of execution were issued by Gibson on July 12, 1977, and on August 23, 1977, by Hallmark. However, discovery, in this case by interrogatory of Mr. Silverman, was not conducted until August 23, 1978, fully one year *after* the issuance of the first writs, and one week after the issuance of the alias writs of execution. Clearly, the judicial purpose, as stated in *Skulnik*, supra, was not served by conducting discovery proceedings after the writs were issued; the sheriff had no notice of what items of personalty upon which he could levy. Instead, he levied upon the real property owned by the bankrupts. He erred in doing so, for it is apparent from the record that the Silvermans possessed personal property such as the household furnishings. As previously stated, the questions asked of Mr. Silverman focused upon possession of aircraft, boats, firearms, and sporting goods. Hence, even if the same interrogatory had been conducted before the writs had been issued, information about the Silvermans' household personalty would have been insufficient to direct the sheriff to levy properly upon the bankrupts' assets under N.J.Stat.Ann. § 2A:17–1, supra. It was actually necessary for the sheriff to make a physical inventory, which he is, by the very statute under which levy is made, ordered to do. The propounded interrogatories were of no value.

## CONCLUSION

From the foregoing findings of fact and conclusions of law, it is clear that the sheriff improperly executed upon the real property before exhausting the personal property of the debtors, and that discovery should have been held before the writs of execution were issued, rather than after. Therefore, judgment in favor of Trustee for leave to proceed with sale of the real property, 45 Flipper Avenue, Manahawkin, New Jersey, and against Gibson and Hallmark must be allowed, as they do not have prior superior liens against the real estate in question; hence, Gibson and Hallmark would not be able to proceed with sale of the real estate in satisfaction of their judgments against bankrupts Irving and Dorothy Silverman.

It is so Ordered. Let a judgment in conformity with this opinion be submitted.