### IN THE

# SUPREME COURT OF JUDICATURE

#### OF THE

### STATE OF NEW JERSEY,

#### AT MAY TERM, 1832.

THE PRESIDENT, DIRECTORS AND COMPANY OF THE PATERSON
BANK v. BENJAMIN HAMILTON, late Sheriff.

If the plaintiff by letter directs the sheriff " to adjourn the sale and stay until farther orders," he cannot on an application to amerce the sheriff, insist that the officer did not make a full and complete inventory of the personal property on which he levied. By giving such directions to the sheriff, the plaintiff accepts and ratifies the return and absolves the sheriff from any neglect to execute the writ, which had previously occurred ; at least so far as to preclude the plaintiff from setting up those matters as grounds of amercement. When such directions are given, the personal property levied upon, is afterwards at the risk of the plaintiff , and the sheriff is responsible for such part only as he found in the hands of the defendant or was within the reach of due diligence, when the stoppage was removed.

This was an application to amerce the defendant, late sheriff of the county of Sussex. The facts and circumstances of the case are fully detailed in the opinion of the court delivered by the Chief Justice.

*Dickerson* argued for the plaintiffs.

*Ryerson* and *Haines*, contra.

159

EWING, C. J.    The President, Directors and Company of the Paterson Bank have moved to amerce the late sheriff of the county of Sussex, upon a fieri facias *de bonis et terris*, for a large sum of damages and costs, issued out of this court in their favor, against Nicholas Ryerson, delivered to the sheriff on the 30th day of September, 1827, and returned by him to the term of November, 1827, with a levy on " 5 horses, 20 head of horned cattle, 20 sheep, 10 hogs, 4 beds and bedding, 2 tables, 12 chairs, with all the household property and farming utensils,"" and several farms and lots of land specifically mentioned in the return.    The personal property was suffered by the sheriff to remain in the hands of the defendant, Ryerson.    Previous to the issuing of this execution and upon prior judgments, divers executions and for large sums, in all extending to a great amount, had been issued and levied on the same personal and real estate, some of them by Sheriff Hamilton and some of them by a former sheriff, Vancleve Moore.    Moore had died leaving the executions in his hands unfinished ; and writs for sale post scire facias, agreeably to the statute providing for business unfinished at the decease of a sheriff, had been issued, some of which had been placed in the hands of Hamilton, and one of them had been delivered to George Mushback, an intermediate sheriff, to be executed.    This was the posture of affairs in February, 1828, when the defendant, Ryerson, made a negotiation with the bank, whereby they received from him a note of one Amos Munson for 500 dollars, which was paid at maturity, and which consequently so far tended to satisfy the execution out of funds not within its reach ; and the attorney on record of the plaintiffs, under their authority, delivered to the defendant a letter which he handed, according to its address, to Sheriff Hamilton, dated on the 9th February, 1828, and containing these words, " In the case of the Bank against Nicholas Ryerson," the Paterson Bank had been previously named in the same letter in reference to another execution, " you may adjourn the sale and stay until further orders."    The sheriff did stay his proceedings on the execution, leaving the personal property, as before, in the hands of Ryerson ; and further orders do not appear to have been given until the summer of 1830, and then in the manner which will be hereafter mentioned.    In October, 1828, a proposition

was made by Ryerson to the directors of the bank, to pay 1000 dollars a year on account of the judgment and execution, until fully discharged, the judgment and execution in the mean time to stand ; which proposition, Ryerson, in his affidavit, says he was informed by the president of the bank and one of the directors, had been accepted, but the cashier of the bank says it was rejected by the board. And whether in consequence of this proposition, or from whatever cause, there was paid by Ryerson to the bank, on account of the execution, besides the note above mentioned, at one time, about 500 dollars, and in June, 1829, about twelve or thirteen hundred dollars, according to the affidavit of the cashier.

Having now the facts before us, we may, before we proceed to the subsequent history of the case, examine the grounds on which the plaintiffs claim amercement of the sheriff, on matters antecedent to the directions to stay proceedings given in February ; which are, first, that the sheriff did not make and return with the writ of execution, a full and complete inventory of the personal property on which he levied ; and second, the neglect of the sheriff to sell the property and raise the money prior to the above mentioned time.

I do not consider it necessary to examine whether the omission to return a more full inventory or to execute the execution prior to the 9th of February, had rendered the sheriff liable to amercement. For if he was so, the written direction given to him by the plaintiffs, in broad and unqualified terms, to adjourn the sale and stay until farther orders, did, in my opinion, accept and ratify the return made by him, and absolve him from any neglect to execute the writ which had previously occurred, at the least, so far as to preclude the plaintiffs from now setting up those matters as grounds for amercement. The letter written by the attorney of the plaintiffs was, as respected them, a command to the sheriff to adjourn the sale and to stay proceedings. And this instruction, whether to be viewed as a command or permission, was, as already remarked, purchased by the defendant, and granted by the plaintiffs, on a valuable consideration, a payment of part of their demand out of funds otherwise beyond their reach. If the plaintiffs meant to have held the sheriff to any previous liability so as to have afterwards enforced it

11

against him, they should have abstained from all interference or have given their direction in a qualified manner, substantially but distinctly apprizing the sheriff that the delay, if it occurred, was to be at his risk, and to waive no existing liability on his part. But they manifest no cause of dissatisfaction, and unquestionably felt none at that time, with any part of his conduct. On the contrary, it is evident they considered him more prompt and urgent than they desired, or than they felt it to their interest that he should be ; and they stop him therefore in the course of duty, in his progress to the execution of their writ. Shall we then, under such circumstances, amerce the sheriff ? I find myself forbidden by every principle of reason, of justice and of law.

Early in the summer of 1830, Hamilton, who had then ceased to be sheriff, his term having expired, was directed by the plaintiffs to proceed on the execution. The farther orders, for which he was directed to stay, were given. It is somewhat remarkable that the proof of the orders to proceed, does not come from the cashier or the attorney of the plaintiffs, and is only shewn by what Hamilton told the defendant, that he was under the necessity of proceeding on the execution, being urged by the bank ; and without this declaration of the sheriff thus proved, there would, so far as appears from the documents before us, be no evidence that the plaintiffs had ever removed their stoppage. A sale was made in August, 1830, of the personal property by Hamilton, under the executions in his hands, and of the real estate by the late Sheriff Mushback, under the prior execution already mentioned in favor of one Matthew Van Orstrand. The amount did not discharge the claims antecedent to that of the plaintiffs.

The grounds of amercement here, are, a neglect to execute the fieri facias, and the abstraction of a portion of the chattels levied on, which consequently were not brought under sale.

1st. The neglect to execute the writ. Until the stoppage was removed and orders were given to the sheriff no farther to stay, there was no neglect imputable to him. The precise time when he was directed to proceed does not appear. " Early in the summer " are the words of the witness ; and how long therefore, before the sale was made, we are unable to ascertain. Certainly

Paterson Bank *v.* Hamilton.

not with sufficient confidence to justify an amercement of the sheriff on the ground of neglect alone.

2nd. A portion of the personal property in the hands of the defendant at the time of the levy, and included in the inventory was, it is said, not sold by Sheriff Hamilton.    The property, as already mentioned, remained in the hands of Ryerson, after the stay of execution.    In the intermediate time, before the orders to proceed were given, divers articles were used by Ryerson or otherwise disposed of, so as to be placed out of the reach of the officers.    During this period of time the personal property was, in my opinion, at the risk of the plaintiffs, and the sheriff was responsible for such part only as he found in the hands of the defendant, or was within the reach of due diligence, when the stoppage was removed ; not because it is the custom in the county of Sussex, and known to the attorneys there, as is stated by one of the affidavits, for a sheriff to leave the property levied on in the possession of the defendant unless otherwise ordered by the plaintiff, for when he does so unless so ordered by the plaintiff, the property is at his risk by law notwithstanding the custom ; but because the property, being in the hands of the defendant, and so known to the plaintiffs as we may rightfully presume, the order to adjourn the sale and stay farther proceedings, thus given, in an unqualified manner, by the plaintiffs, interfering with and putting aside the regular course of duty by the officer, removed from him and imposed on the plaintiffs the subsequent risk of the dispersion of the goods.    There is no evidence that Hamilton did not sell all the personal property which was within his reach either at the time of sale or of the orders to proceed. On the contrary, it appears from the testimony of Lewis M. Decamp, esq. that at the time of the sale a careful scrutiny into the property bound by the respective executions took place, and the fair inference from the representation he makes, is, that Hamilton sold all within his power.    For the diminution of the property and the loss somewhere sustained ; and which there is much reason to believe, is not by the execution of the plaintiffs, but by the antecedent ones; Hamilton ought not to be made responsible.

The amercement applied for ought not therefore, in my opinion, to be ordered.

Paterson Bank *v.* Hamilton.

It may not be unprofitable .or unsatisfactory to enquire· whether the bank has sustained any injury by the course which. has been pursued in respect to their execution.   By the conduct of Hamilton, the sheriff, I think it is demonstrated, they have· sustained none.· By the discreet management of their cashier, or· attorney, or of whomsoever it may have been, it seems to me· they have been benefitted and the interests of the institution· promoted.   They have realized between 2200 and 2300 dollars,. no part of which, or of the execution, would, in all probability, have been obtained if a sale had been pressed, instead of a stay permitted, in February, 1829.   There were previous executions to a great amount levied and entitled to priority on the real and personal estate besides mortgages on the former.   The personal estate, upon the farm, and levied on, according to es--timate of Ryerson, which there ·is nothing to contradict, was worth at the time of the levy, 1690 dollars, a sum far less than was received by the plaintiffs ; and there was never to the knowl-edge or belief of Sheriff Decamp, personal property in the hands of Ryerson, sufficient to satisfy the execution of Bron-son,·one of those prior to the plaintiffs.   Ryerson, it appears, owned two valuable horses worth as he supposes, 1000 dollars ; one of which he sold in the spring of 1828, and the other in the· fall of the same year.   But one of them, it appears by other testimony, was taken· to Paterson, after the spring season of 1827, remained there during the fall season of that year, and was afterwards sold there.   The other was kept in the spring· season, at Florida, in New York ;   and I do not find from the evidence that either horse was, at any time, within the reach of the plaintiffs' execution.

Upon the whole, it is clear the plaintiffs have sustained a loss· of a large·portion of their debt ; but I think they have no rea-·son to complain of their agents or of the public officer.

Ford, J. and Drake, J. concurred.

Amercement refused.

Cited in *Scott* v. *Dow,* 2 *Gr.* 351; *State* v. *Hamilton,* 1 *Harr.* 155 ; *Stryker* v.*Merseles,.* 4 *Zab.* 544 ; *Waterman* v. *Merril,* 4 *Vroom,* 381.