DETERMINED IN THE

# COURT OF ERRORS AND APPEALS

OF THE

STATE OF NEW JERSEY,

AT JUNE TERM, 1873.

---

HENRY B. KEMBLE ET AL., ADMINISTRATORS, &c., OF CHARLES KEMBLE, DECEASED, PLAINTIFFS IN ERROR, v. PHEBE HARRIS, DEFENDANT IN ERROR.

1. The words, "writ of execution," in the twenty-second section of the act concerning sheriffs, apply to writs of *fieri facias* as well as to writs of *capias ad satisfaciendum*.
2. Where adverse claim is set up to property levied on by a sheriff, and the plaintiff's attorney and the sheriff are in correspondence as to the action to be taken in the premises, the latter asking and the former promising instructions, the sheriff is not liable to amercement for not proceeding to sale until he shall have disobeyed or disregarded positive, reasonable and lawful directions to that end.
3. A levy made after the return day of a writ of *fieri facias*, is a nullity.

---

In error to the Supreme Court.

On the 15th day of February, 1870, a writ of *fieri facias*, returnable on the fourth Tuesday of that month, was issued out of the Supreme Court at the suit of Phebe Harris, against Alexander Kirkpatrick, directed to the sheriff of Burlington. It was delivered to the sheriff on the 22d day of the same

Kemble et al. v. Harris.

month, the day on which it was returnable. On the 24th he made a levy under it on certain personal property in the possession of the defendant, and on the 28th, apprised the plaintiff's attorney of the levy, at the same time informing him that the defendant's wife, alleging that the goods were not the property of her husband, had protested against it, and that the defendant, in whose absence from home the levy had been made, had, on his return, also denied all ownership of the goods. The sheriff suggesting that proceedings under the levy, with a view to sale, would probably result in a claim of property and a trial of title, asked for instructions.

On the 2d of March following, the attorney, in reply, directed the sheriff to levy on everything the defendant had; to make a careful and exact appraisement; to permit the defendant to make the selection he was entitled to by law; obtain from his wife a statement of her claim of property, and send to the attorney a copy of the appraisement and statement of selection, the attorney promising, that on receipt thereof, he would give the sheriff further instructions. On the 24th of May following, the sheriff having been urged by the attorney to proceed, apologized for his delay, excusing himself for having made no appraisement, on the ground that he had become satisfied that the goods levied on were not the defendant's property; and expressing his conviction that nothing could be made on the execution, declared his readiness to make the appraisement, if insisted on under the circumstances, and requested immediate instructions on the subject.

On the 26th of May the attorney wrote to the sheriff requesting that a copy of the execution and of its endorsements, as well his own as those of the sheriff, and a copy of the inventory be sent to him at once, but neither gave any further instructions nor promised any.

To this the sheriff replied, on the 28th day of May, stating his inability to comply with the request it conveyed, because he had returned the writ. No further correspondence took place between the parties on the subject, except that on the

7th of June following, the attorney wrote to the sheriff suggesting a suspicion of bad faith, and expressing an intention to proceed to amerce him. Motion was made for an amercement in the Supreme Court at the term of February, 1872, and an amercement ordered. See *Harris* v. *Kirkpatrick*, 6 *Vroom* 392.

For the plaintiffs in error, *James Wilson.*

For the defendant in error, *F. F. Westcott.*

The opinion of the court was delivered by

THE CHANCELLOR.    On the argument in this court it was urged that the notice of amercement was insufficient, because it stated the grounds of the application to be that the sheriff had "neglected and refused to execute the writ of execution, and that he had neglected to file a just and true inventory of the goods and chattels, lands and tenements levied on and taken in execution" under the writ, which was a *fieri facias*, while judgment of amercement was asked solely on the ground that the sheriff had not proceeded to sale of the property levied on.    It was insisted that the words "writ of execution," in the twenty-second section of the act concerning sheriffs, (*Nix. Dig.* 891,)* under which the proceedings for amercement were taken, have reference to a writ of *capias ad satisfaciendum*, and not to a writ of *fieri facias*, and that if that section authorizes an amercement for neglecting or refusing to execute a *fieri facias*, this case is not within it, because a writ of *fieri facias* is executed by levy and return.    In *Scott* v. *Dow*, 2 *Green* 350, it was held that the word "execute," used in connection with these words in the section referred to, is to be taken in the sense of *fulfil* or *complete*, and that if a sheriff, having levied under a *fieri facias*, unlawfully neglects or refuses to proceed to a sale, he fails to fulfil or complete, and therefore to execute, the writ.    *Stryker* v. *Merseles*, 4 *Zab.* 544.

In *Waterman* v. *Merrill*, 4 *Vroom* 379, the court say on this subject, construing the word with reference to a *fieri*

* *Rev., p.* 1102, § 22.

*facias:* "To execute the writ in the sense of the act is to do all that the writ commands to be done." These decisions are according to the plain signification of the term as it stands in the statute, and it is evident that the words "writ of execution" were intended to embrace writs of *fieri facias,* as well as writs of *capias ad satisfaciendum.*

In the case before us, the sheriff levied on the goods in the possession of the defendant, but proceeded no farther towards a sale. While it appears that adverse claim was made, it does not clearly appear that it was in writing. If it was, no notice was given under it by the claimant to the plaintiff.

The rights and responsibilities of the plaintiff and the sheriff, therefore, remain as at common law.

A few days after making the levy the sheriff apprised the plaintiffs' attorney that the defendant disclaimed ownership of the property; that claim was made upon the property by the defendant's wife, and that in all probability proceedings with a view to sale would eventuate in a formal claim to all the goods and a trial of title.

In reply to his request for instructions then made, the attorney directed him to make a minute levy, a careful and exact appraisement, to allow the defendant his selection under the statute, to get from the defendant's wife a statement of her claim, and to send him a copy of the appraisement, selection and statement. He promised at the same time further instructions after these directions should have been complied with. So matters stood until the 24th of May, when the sheriff wrote to the attorney excusing himself for not having made the appraisement, and again declaring his willingness to proceed if required, renewed his request for instructions.

To this the attorney replied by asking for copies, but neither giving nor promising any further instructions. The plaintiff insists that the sheriff, after receipt of this last communication, returned the writ without further effort to make the money. Conceding this, there is no ground for amerce-

ment.   The sheriff had a right to return the writ when he did; the return day was long passed.   The attorney had not directed the sheriff to proceed to sale.

From the correspondence, the latter had reason to conclude that he was to be guided and governed by the directions he should receive from the former, and that that was to be the limit of his responsibility.   Under the circumstances, he could not have expected to be held liable for not proceeding to a sale until he had disobeyed reasonable orders to that end.

Where, as in the case before us, an adverse claim is set up to goods levied on, and the sheriff and plaintiff's attorney are in correspondence as to the action to be taken in the premises, the former asking and the latter promising instructions, the sheriff is not liable to amercement until he shall have disobeyed positive, reasonable, lawful directions.

The case, in this aspect, falls within the principle of *Paterson Bank* v. *Hamilton*, 1 *Green* 159 ; *Leroy* v. *Blauvelt*, 1 *Green* 341 ; *Scott* v. *Dow*, 2 *Green* 350 ; *Stryker* v. *Merseles*, 4 *Zab.* 544; and *Waterman* v. *Merrill*, 4 *Vroom* 379.

In Scott *v.* Dow, the court say : " A plaintiff ought not first to disarm a sheriff, and then hold him liable for not executing a writ."

In the present case, however, no reasonable lawful orders were possible, owing to the character of the levy.

The writ was returnable on the very day on which it was delivered to the sheriff.

The levy was made two days afterwards.   It was therefore a nullity, and the sheriff was liable to be treated as a trespasser for making it.   He could not lawfully have sold under it.   He cannot be amerced for not proceeding to sale under a void levy.

Nor is he, under the circumstances, estopped from setting up this defence.   He communicated to the plaintiff's attorney the fact that the writ had come to his hands on its return day, and that he had levied under it, stating the date of the levy.   Both must have known that the levy was a nullity,

and then subsequent correspondence must be viewed in the light of that fact.

The judgment of the Supreme Court must be reversed.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, DE-PUE, VAN SYCKEL, WOODHULL, DODD, LATHROP, LILLY, WALES. 9.

*For affirmance*—None.