## JAMES STEVENS v. JESSE S. DEATS ET AL.

1. A sheriff is not bound, without indemnity, to levy on goods standing in the name of and claimed by another than the defendant in execution.
2. If a sheriff, instructed to levy on specified goods, rightly determines not to levy without indemnity, he must so act that the plaintiff or his attorney shall not reasonably be misled in regard to his purposes.
3. The court will not conclude that a sheriff has been guilty of delinquency justifying his amercement, unless the presumption in favor of the propriety of his official conduct be fairly overcome by preponderance of proof.

---

In debt. On motion to amerce the sheriff of Cape May for failure to execute a writ of *fieri facias*.

Argued at February Term, 1879, before Justices VAN SYCKEL, KNAPP and DIXON.

For the plaintiff, *D. J. Pancoast.*

For the sheriff, *W. E. Potter.*

The opinion of the court was delivered by

DIXON, J. This is a motion to amerce the late sheriff of Cape May for failing to execute a writ of *fieri facias*. The only question necessary to be considered is whether the sheriff was guilty of any default.

The writ was transmitted to him by the plaintiff's attorney on April 27th, 1878, accompanied by a letter of that date as follows: "Under the enclosed writ you will please levy upon all the property you can find belonging to Jesse Deats, or in his possession and under his control, including his stock in trade, which is under cover of his mother-in-law's name." On receipt of this, the sheriff, having doubts about the title of the stock in trade, which was the only property of the defendant in his county, and on which, as the property of the

mother-in-law, he had already levied under a prior writ, consulted his counsel, who advised him, "that unless he was satisfied the property belonged to the defendant, or had reasonable grounds to believe that it belonged to him, his duty did not require him to levy upon the property, unless he was indemnified for so doing by the plaintiff in execution." In consequence of this advice, he did not make a levy, but returned the *fi. fa.* on its return day, at the June Term, *nulla bona.*

It is clear that the sheriff was not bound to levy on these goods so standing in the name of and claimed by another than the defendant, without indemnity. *Harris* v. *Kirkpatrick,* 6 *Vroom* 392; *Harrison* v. *Allen,* 11 *Vroom* 556.

But it is also clear that he was bound, in case he determined not to levy unless indemnified, so to act that the attorney should not reasonably be misled in regard to his conduct and purpose in the premises, and thus be deprived of the opportunity of obtaining a levy by indemnity; and the important inquiry in the cause is whether the sheriff's conduct was of this character. The sheriff insists that it was. He testifies that he went directly from the consultation with his counsel to the office of the plaintiff's attorney, and stated to him the substance of the advice he had received, and told him if he did anything with the execution he should require an indemnifying bond, to which the attorney replied that he would indemnify him if he wished him to sell. The plaintiff's attorney, in giving his version of this interview between himself and the sheriff, testifies—"the sheriff said to me that he would not proceed to a sale of Deats' property under the writ, until he was indemnified; I told him I did not expect and would not ask him to do it; that I would indemnify him at the proper time; he said not a word to lead me to suppose or suspect that he had not made a levy according to the direction in my letter; * * * I told the sheriff that I would indemnify him for everything he should do under the execution according to my instructions."

It is evident, therefore, that the sheriff made known to the

Stevens v. Deats.

attorney his requirement of indemnity; but the exact point of dispute between these witnesses is whether the proper inference from their communications was that he demanded the security before levying, or only before selling. The natural import of the evidence of both is that indemnity was to be furnished only in case the attorney should wish a sale, but the sheriff's language implies that *nothing* had been or would be done without a bond, and he was to await the attorney's determination as to the complete execution of the writ before proceeding at all; while the attorney's implication is that *nothing further*, levy being already perfected, should be asked till security was given.

We are entirely satisfied of the *bona fides* of both these gentlemen in their recollection and narration of the interview. Nor do we think that anything appears in their subsequent correspondence, when their misunderstanding became mutually known, or in any circumstance testified to by witnesses, from which any conclusion can be drawn as to the probability of the verbal accuracy of one rather than the other. Indeed, it is quite possible that the words used in their conversation were such as, to the sheriff, who knew that he had not levied and supposed the attorney so understood, would seem to indicate that no levy had been made or would be without security; and to the attorney, presuming that the sheriff had levied, would convey the opposite meaning.

In such a condition of honest mistake, the decision ought to be favorable to the sheriff.

In the first place, there is the general rule that he who bases his claim on the default of another must establish the default, a rule intensified in the case of a public officer by the presumption in favor of the propriety of official conduct. In the next place, as the attorney knew that the stock in trade which he desired to have seized was "under cover of the mother-in-law's name," so that a levy would be likely to subject the sheriff to an action for damages, he ought not to have inferred that the sheriff, when he was demanding the protection of a bond, had already incurred that risk without one;

he should have sought explicit information on that point. The duty of the sheriff not requiring him to levy, and his disinclination to jeopardize himself being manifest, the attorney, before concluding and resting satisfied upon the idea that a levy had been made, should have obtained some unequivocal declaration to that effect. We do not find proof of such unambiguous expressions or conduct by the sheriff as should have lulled the attorney into repose.

We therefore conclude that there is not established any default on the part of the sheriff which justifies his amercement, and hence the amercement is refused, with costs.