SUSAN WHITE v. SAMUEL ROCKAFELLAR ET AL.

1. On a motion to amerce a sheriff for neglecting to levy a writ of *fi. fa.*, the plaintiff is not required to show with precision the value of the property on which levy might have been made. It is enough if he show that the neglect has deprived him of a substantial benefit under his writ.

2. A notice of a motion to be made before this court upon a day specified, (which is a day of general election,) "or as soon thereafter as the court can attend to the same," is a good notice for the day succeeding the designated day.

On motion to amerce the late sheriff of Warren county.

Argued at February Term, 1883, before Justices DIXON and MAGIE.

For the motion, *W. M. Davis.*

Contra, *G. M. Shipman.*

The opinion of the court was delivered by

DIXON, J. On April 21st, 1877, the plaintiff's attorney mailed to John Gardner, then sheriff of Warren county, a writ of *fi. fa. de bon. et terr.* against five defendants, among whom were John W. Dean and Benjamin T. Harris, together with written instructions to levy on all property of these two defendants at once. The writ was returnable at the June Term, 1877, of this court, and required the sheriff to make $1239.74, damages and costs. The sheriff duly received the execution and delivered it to his deputy for enforcement. The deputy met the defendant Harris, and told him he had the execution. Harris replied that the money was to be made out of Rockafellar and Farron, (two other defendants,) and that he was only an endorser on the note, and that the matter would be adjusted in some way outside of his hands so that he would have nothing to do about paying the amount. The

deputy reported to the sheriff that he had seen Harris, and Harris had told him he was nothing but an endorser and did not expect to pay it. This is all that was done by the sheriff or his deputy towards obeying the writ.

The evidence taken for this motion shows that during the life of the writ the defendant Harris was a householder in Phillipsburgh, in Warren county, and was possessed of a reasonable amount of household goods and chattels, which were unencumbered. An inventory of these articles is made an exhibit in this proceeding, and although no appraisement of their value appears, it is manifest that their worth was considerably in excess of the amount exempt by law.

The proofs further show that the defendant Dean was likewise then a householder in Phillipsburgh; that his house was large and well furnished, having a piano and organ in it, and the furniture being, in Harris' opinion, worth more than his own.

The deputy knew where Dean and Harris lived, and that the other defendants resided out of his county.

While the writ was alive in the deputy's hands, a messenger from the plaintiff's attorney called on him and asked what he had done in the matter. The deputy answered that he had levied on all the personal property and real estate, but they had not done anything because everything was covered up. The messenger replied that there was money in the property, and they wanted all there was in it. The deputy said he would attend to it right away.

Under these circumstances the plaintiff moves to amerce the sheriff for neglecting to execute the writ, in failing to make any levy on the personal property of Dean and Harris.

It would be difficult to make a clearer case of breach of official duty than this is. The sheriff was bound to exercise reasonable diligence in searching for property on which to levy, and to seize that which such diligence would bring to light. No doubt, the least investigation would have discovered the goods which these defendants owned and possessed. Indeed, it is highly probable that the sheriff or his deputy

White v. Rockafellar.

actually knew that there were chattels which could be applied to the satisfaction of the execution; but they were content to disregard their duty on the statement of one of the defendants that the money ought to be made out of two others, who were beyond the confines of the sheriff's authority. Unquestionably, the sheriff ought to be amerced, unless there is some legal obstacle in the way.

The sheriff contends that the plaintiff is bound to show the value of the property subject to levy. But such is not the law. It would be highly inconvenient and unjust to require an innocent plaintiff to prove the value of goods which had been in the sheriff's power, but which, through his neglect, may have been eloigned beyond the reach of plaintiff's investigation. The statute establishes quite a different rule. It declares that if the sheriff neglect to execute his writ of *fi. fa.* he shall be amerced in the value of the debt or damages and costs, to the use of the plaintiff, (*Rev., p.* 1102, § 22); and if the officer's neglect has been such as to deprive the plaintiff of a substantial benefit to which he was entitled, and which but for such neglect, he would have obtained by means of his execution, then, within the statutory sense, there has been a neglect to execute the writ. *Hoagland* v. *Todd,* 8 *Vroom* 544. This species of neglect is clearly proven in the present instance.

The sheriff also contends that the notice of motion to amerce was irregular, because given for "the seventh day of November next, at 11 o'clock A. M., or as soon thereafter as the court can attend to the same," November 7th being a day of general election, and hence a legal holiday on which the court could not sit. *Rev., p.* 481. But if this be irregular, the irregularity has been waived by the taking of testimony under the notice and by adjourning the hearing without objection. I do not, however, think the notice improper, for it was a matter of which the party must be legally presumed to have had knowledge, that the court would not be held on the day named, and that the day following was intended.

Let the amercement be entered.