184 N.J. Super. 512 (1982)
446 A.2d 880
DAVID J. VITALE, PLAINTIFF,
v.
HOTEL CALIFORNIA, INC., T/A HOTEL CALIFORNIA, DEFENDANT.
Superior Court of New Jersey, Law Division (Civil), Cape May County.
Decided March 18, 1982.
*515 Jeffrey K. Israelow for plaintiff (Rubins & Waldron, attorneys).
John A. Giunco for defendant (Richard T. O'Connor, Monmouth County Counsel, attorney).
STALLER, J.S.C.
Plaintiff David J. Vitale, Jr. brings this motion pursuant to N.J.S.A. 40A:9-109 to amerce, that is, hold liable the Sheriff of Monmouth County, William Lanzaro, for failing to execute a writ based on a judgment against defendant Hotel California, Inc. (California)[1]. Although amercement of a sheriff has not been the topic of any reported decision in New Jersey since 1907, see Brockhurst v. Kaiser, 75 N.J.L. 162, n. 1, and infrequently reported elsewhere, a Vermont court recently decided such a case, Dowlings, Inc. v. Mayo, 137 Vt. 548, 409 A.2d 588 (Sup.Ct. 1979).
The chronology of events is as follows: Vitale obtained a final judgment against California in the amount of $6,317 plus costs on August 12, 1980[2] and thereafter learned that California held *516 the liquor license for "The Fast Lane," a bar featuring "punk rock" entertainers, located in Asbury Park, New Jersey. A writ of execution issued on June 23, 1981, and on July 9 the sheriff received the writ along with a cover letter from plaintiff instructing him to levy upon all monies and personal property at The Fast Lane. A check to cover the sheriff's costs up to $50 was enclosed.
Then began plaintiff's travail with the sheriff's office which gave rise to this proceeding. On July 27 the office indicated to plaintiff's attorney, Jeffrey K. Israelow, that a levy was not possible since the bar was only open late in the evening, from about 10 p.m. to 2 a.m., and that the writ would be returned unsatisfied. Israelow thereupon advised a deputy sheriff that it was absolutely necessary to proceed to make the levy during the open hours.
The writ was turned over to a deputy sheriff by the name of Guinan whom Israelow persuaded to make the levy during those late weekend hours when the bar was primarily open for business. Guinan reported to Israelow that he went to The Fast Lane on July 31 accompanied by an Asbury Park police officer, identified himself and announced his purpose at the door, but was denied access by the bar's "bouncers." Fearing that violence might ensue, the officers left. Lanzaro confirmed this fact by a letter dated August 3 in which he asked plaintiff for further instructions. Israelow then advised Guinan to make the levy and arrest anyone interfering with execution, pursuant to the officer's authority under N.J.S.A. 2C:29-1 and other statutes. After conferring with his superiors, Guinan informed Israelow that a court order would be necessary to gain access to the establishment!
On August 5, on plaintiff's application reciting the above facts, this court ordered that the sheriff be permitted access to *517 the bar and to arrest anyone who interfered with the levy to show cause before the court why such person should not be held in contempt of the order. Israelow immediately transmitted the order to the sheriff's office with a letter instructing him to levy first upon the cash registers or places where cash might be held and advising him to be accompanied by sufficient personnel to effectuate any arrests that might become necessary. Guinan then went to the bar on the weekend of August 8, but found it had closed early. After speaking with Israelow he again went on the morning of August 15 and was able to seize $714 in cash and other personal property. Guinan reported back to Israelow the same day and indicated his belief that additional money may have been secreted before he was able to levy upon it. When Israelow instructed Guinan to make further levies until the writ was satisfied, Guinan told Israelow that he would have to consult with his superiors before taking further action.
On or about August 17 or 18 Israelow again instructed the Sheriff's office to make successive levies and then was informed of the sheriff's contention that only one levy need be made under a writ of execution. After telephoning but not getting through to Lanzaro, Israelow forwarded him a letter dated August 19 and a mailgram dated August 20, again requesting the additional levies. Lanzaro telephoned Israelow on August 21 to tell him that he would consult with Monmouth County counsel, Richard O'Connor. Later that day O'Connor's office informed Israelow that the sheriff had been instructed not to make any additional levies under the writ.
Unable to reach O'Connor by phone, Israelow wrote a letter to him on August 24 detailing plaintiff's position and threatening to seek amercement. On August 31 Israelow made good the threat by filing this motion. The hearing on the motion was continued several times until January 14, 1982 at the request of the parties who were trying to negotiate a solution.
The sheriff does not refute the facts outlined above but maintains that "it is unreasonable to expect any Sheriff, to *518 command his officers or deputies to go forth on an unknown number of occasions, at an unreasonable hour, to seize proceeds of an establishment such as The Fast Lane." The sheriff suggests that plaintiff pursue other "reasonable, speedy and inexpensive measures" to satisfy the judgment, to wit, obtaining an order that defendant pay over proceeds of the operation, conducting proceedings to determine where the proceeds are deposited, or locating and seizing other assets of the judgment debtor.
At argument Israelow described his difficulty in collecting the judgment debt: The personal property levied on at The Fast Lane on August 15 was verified as belonging to the landlord of the establishment. Upon this discovery that California was only a tenant, a scheduled sheriff's sale was necessarily cancelled. Also, California's president made a complete disclosure of assets after she had been arrested on an order to show cause, but an attempted levy on the corporate bank account was unsuccessful because the account was overdrawn.
The sheriff further argues that upon seizure of money on August 15 the writ of execution was satisfied and should have been returned, although no return in fact was ever made within the three-month life of the writ. Lack of proof as to loss or damage to plaintiff resulting from the sheriff's [in]action is also raised as a defense. Lastly, the sheriff maintains that the pleading is deficient for failure to specifically state the basis for amercement.
Three basic, interrelated questions are presented for resolution: (1) Are successive levies possible under one writ of execution? (2) When may a sheriff refuse to levy as instructed by a plaintiff, on the basis that the request is unreasonable or onerous? (3) Was the conduct of Sheriff Lanzaro and his office in respect to the writ such as to subject him to amercement?
Before proceeding to answer the first question, a brief overview of execution procedure would be beneficial. A successful plaintiff who obtains a judgment against a defendant may cause *519 the personal property of the defendant/judgment debtor to be seized and sold and the proceeds applied to the judgment and costs by way of execution. N.J.S.A. 2A:17-1 et seq. To do this, plaintiff obtains a writ of execution, directing the sheriff to levy and make a return within three months after the date of issuance. R. 4:59-1(a). (A "return" is the physical return of the original writ to the court clerk, endorsed with the executing officer's brief description of what was done. 20 N.J.Practice (Ackerson, Fulop and Lodge, Skills and Methods) (2 ed. 1973), § 1898 at 613. In addition, the officer must file a verified statement of when and how much money was collected and the balance due on execution fees or costs. N.J.S.A. 2A:17-9).
The writ must be promptly executed upon and returned, N.J.S.A. 2A:15-20. The writ may be returned before the return date if, notwithstanding diligent effort, the judgment cannot be satisfied any further. See 33 C.J.S. Executions § 318 at 618. Once an execution has been returned, a sheriff cannot thereafter levy upon any property under the writ. Cook v. Wood, 16 N.J.L. 254, 257 (Sup.Ct. 1837). Nor can a valid levy be made after the return date. Fredd v. Darnell, 107 N.J. Eq., 249, 251 (Ch. 1930). Successive executions upon the same judgment are possible. N.J.S.A. 2A:17-3; R. 4:59-1(a). Therefore, if the first seizure is insufficient, the creditor may seek an alias writ for levy upon other goods. See Matthews v. Warne, 11 N.J.L. 295, 309 (Sup.Ct. 1830); e.g., Millville Nat'l Bank v. Shaw, 42 N.J.L. 550 (Sup.Ct. 1880). Thereafter, the plaintiff may seek an unlimited number of pluries writs until the judgment is satisfied. 20 N.J.Practice, supra, § 1872 at 586. The proceeds from the sheriff's sale of seized property are paid to the judgment creditor or to his or her attorney or to the court clerk. Id., § 1884 at 599; see R. 4:59-1(a); N.J.S.A. 2A:18-26 (county district court rule).
Throughout the process plaintiff plays a crucial role. Plaintiff must prepare the writ, have it entered by the court clerk and see that it is delivered to the sheriff with instructions *520 as to levying. 20 N.J.Practice, supra, § 1878 at 588, 589. If necessary, plaintiff should conduct discovery to locate and identify property to be levied upon. Spiegel, Inc. v. Taylor, 148 N.J. Super. 79, 84 (Cty.D.Ct. 1977). Complementary to plaintiff's responsibility is the sheriff's duty to execute the writ according to the plaintiff's instructions. The writ is in the "exclusive control" of the judgment creditor; the sheriff must follow the creditor's reasonable instructions regarding the time and manner of making the levy and must abide by special instructions to make an immediate levy, if practicable, when plaintiff demonstrates necessity. Executions, §§ 90 and 93 at 234-237. See Dowlings, supra.

I. Successive Levies Under One Writ
The first question presented, whether successive levies can be made under one writ, can be simply answered  "yes." The rule that further levies under one writ are authorized under the same writ before the return day if the initial levy does not satisfy the judgment is recognized universally. 33 C.J.S. Executions § 103 at 256. The argument that a levy and inventory of goods on one day precluded a subsequent levy on another day before the writ was returned was presented and rejected in Moses v. Thomas, 26 N.J.L. 124, 126 (Sup.Ct. 1856), aff'd Van Waggoner v. Moses, 26 N.J.L. 570 (E. & A. 1857). "No rule of law forbids the sheriff from seizing part of the goods at one time and afterwards more, if those first taken are not sufficient." Moses, supra, 26 N.J.L. at 127. Also, the county district court rule, N.J.S.A. 2A:18-23, that the executing officer report to the party or the party's attorney for further instructions before returning the execution "unsatisfied," contemplates further levies under the same writ.
If property levied on is not sufficient to satisfy the execution, a return should not be made without a showing that attempting another levy would be fruitless. 33 C.J.S. Executions § 321 at 621. That is not to say that Sheriff Lanzaro *521 would have been exposed to potential liability for returning the writ after seizure of money on August 15. Arguably, the sheriff might have returned the execution with "as so much money collected." N.J.S.A. 2A:17-15. Had the sheriff in fact returned the writ, plaintiff could then have obtained an alias writ, expecting that more money would be available to be seized at The Fast Lane during the remainder of the summer season. Since an alias writ should not issue before the original execution is returned, 33 C.J.S. Executions § 85 at 227, and may be voidable as irregular if prematurely issued, see Rammel v. Watson, 31 N.J.L. 281, 283 (Sup.Ct. 1865), plaintiff was under no duty to seek an alias writ, the original writ not having been returned.
If Sheriff Lanzaro mistakenly but honestly believed that an alias writ was necessary and proper for a subsequent levy, he did not make this position clear or even suggest an alias writ to Israelow. Thus, plaintiff's attorney was "lulled ... into repose," into thinking there was no procedural step he could take to have the sheriff attempt another levy. Compare Stevens v. Deats, 41 N.J.L. 340 (Sup.Ct. 1879). In Stevens, an amercement action, the sheriff, after consulting with counsel, informed plaintiff's attorney of the need for indemnification (see N.J.S.A. 2A:17-29, 32) due to the claim of defendant's mother-in-law in the property to be levied upon. The sheriff's conversation with plaintiff's attorney resulted in an honest misunderstanding  the sheriff intended to convey that no levy would be made without the security whereas plaintiff's attorney presumed that levy would be made but sale of the property was to await the posting of security. Id. at 342. Plaintiff's attorney, being aware that seizing "stock in trade which is under cover of [debtor's] mother-in-law's name," as instructed in the letter accompanying the writ, could have subjected the sheriff to an action for damages, should have elicited an "unequivocal declaration" from the sheriff that the levy had already been made. Id. at 342, 343. By contrast, the clear import of the communications from Lanzaro's office to Israelow was that plaintiff's request was unreasonable *522 despite plaintiff's preparedness to pay any associated costs or pursue any necessary procedural course. That objection remained, notwithstanding any possible issuance of an alias writ, which property could not have issued while the original writ was outstanding.

II. Reasonableness of Requested Levies
That brings us to the second question, whether the sheriff rightly refused to honor an unreasonable request to levy. The particular elements of the request perceived as unreasonable must be reviewed.
The sheriff first objects to the "unknown number of occasions" that he and his deputies would have to go forth to attempt levy in order to comply with plaintiff's wishes. Since there is no limit to the number of executions that conceivably could issue within 20 years after a judgment was entered until the judgment is satisfied, see N.J.S.A. 2A:17-3, there is technically no limit to the number of times that a sheriff might be required to levy. Nevertheless, practical, operational considerations of a sheriff's office impose an obligation on a plaintiff not to request inordinately frequent and numerous levies. The one successful levy netting $714 on August 15 can be used to project what was entailed by plaintiff's request for levies on successive weekend nights. By extrapolation, the sheriff might have had to levy approximately nine times in the space of one to two months to comply with the request. This many potential levies under one judgment may be unusual but is not in itself unreasonable and, under the circumstances, was not excessive since the bar was basically a summer operation. Furthermore, seizure of several hundred dollars at one time demonstrated the effectiveness of this mode of levying.
There was also some indication of irregularity in the days of the week that The Fast Lane was open for business. Sheriff's counsel acknowledged, however, that local newspaper advertisements for The Fast Lane could be consulted to remove uncertainty about operating hours. Plaintiff, moreover, expressed a *523 willingness to facilitate the execution in any way, and no doubt would have relayed the necessary information if lack thereof had actually presented a stumbling block.
The objection as to the unreasonably late hour requested for the levy also cannot be sustained. The bar was open for business, mostly on weekends, from about 10 p.m. to 2 a.m. Israelow directed that service be made during those hours; the sheriff avers that the instruction was to levy at 2 a.m. Whatever the precise instruction was, levy was to be made at some time during those nighttime hours  levying at 2 a.m. would probably find the cash registers near their fullest and thus minimize the number of additional levies required. Levy under a writ of execution may be made at any hour of the day; there is no issue of privacy here that might dictate otherwise. See, also N.J.S.A. 2A:15-21.1 (authorizing service on Sunday). The Fast Lane's late open hours impelled the late-at-night levy. Like police officers, sheriffs and their deputies may be obliged to work at times of the day and week when the rest of the populace sleep or recreate.
The threat of violence engendered by attempting the levy goes to the heart of the sheriff's objections. "[T]o seize proceeds of an establishment such as The Fast Lane" uncamouflages what may have been the most unappetizing aspect of the requested levy. (Emphasis supplied). On July 31, fearing violence, the deputy sheriff and an Asbury Park police officer allowed themselves to be turned away by bouncers at the door. At that juncture, at the sheriff's instigation and upon plaintiff's application, this court ordered, under what it considered as its inherent powers, that anyone interfering with the execution be arrested and brought before the court to show good cause. Armed with the order, the sheriff successfully levied on August 15. Nevertheless, the refusal to make further levies implies that a conscious decision may have been made to risk amercement rather than further confrontations at the bar.
When is physical force appropriate in making a levy? The general rule is that:

*524 ... [an] officer may force an entry into any enclosure except the dwelling house of the judgment debtor in order to levy a fieri facias on the debtor's goods and even in the case of the debtor's home, when the officer is once inside, he may break open inner doors or trunks to come at the goods. [33 C.J.S. Executions § 96 at 242]
It was said by way of dictum in Nelson v. Van Gazelle Valve Mfg. Co., 45 N.J. Eq. 594, 598 (Ch. 1889), that a constable making a levy would have been "warranted in law in breaking into the factory and making an actual seizure and adequate inventory...." (Nelson held that a constable's incomplete inventory of goods by looking at them through a window of a locked factory was an ineffective levy.) In Spiegel, supra, the offense of obstructing an officer was found not to apply because there was no indication that the defendants had interfered with the officer's levy. 148 N.J. Super. at 83. By contrast, according to Lanzaro's recital, on July 31 The Fast Lane bouncers did in fact, obstruct the officer from "performing an official function by means of intimidation," N.J.S.A. 2C:29-1; see State v. Kent, 173 N.J. Super. 215 (App.Div. 1980); State v. Cassatly, 93 N.J. Super. 111 (App.Div. 1966); State v. Furino, 85 N.J. Super. 345 (App.Div. 1964), giving the officers probable cause to arrest them. Their resistance to the lawful process might have been a basis for criminal conviction. See In re Burroughs, 125 N.J. Super. 221 (App.Div. 1973). Although the officers did not believe themselves to be in a position to use physical force, they apparently did not summon back-up help to effectuate the levy or make arrests incidental thereto.
Are sheriffs' deputies to be faulted for not using physical force in a nonemergency situation? The nature of law is to physically force people, if need be, to do things or refrain from doing things that they would be free to do or not do in the "natural state"; the hope is that the benefit to society will more than compensate for the loss of individual freedom. Sheriff's officers act as the physical extension of the power of the court, and thus, of the law and the will of the people. Necessarily, *525 then, the privilege of such civil service occasionally demands risking bodily harm to oneself. Only in this way will the lawless be kept from becoming the de facto law makers. Philosophy aside, the record is barren of facts showing any imminent harm to the sheriff's officers on July 31 other than the vague averment that attempting to carry out the levy may have triggered a violent reaction. I find this unembellished defense insufficient to justify not making the levy.

III. Amercement
Consequently, by concluding that the sheriff failed to abide by plaintiff's proper requests to levy, I reach the question of amercement.
By proceeding in amercement, a judgment creditor may hold a sheriff liable for failing to properly execute against a judgment debtor:
If a sheriff or acting sheriff fails to perform any duty imposed upon him by law in respect to writs of execution resulting in loss or damage to the judgment creditor, he shall be subject to amercement in the amount of such loss and damage to and for the use of the judgment creditor. Such amercement may be made by the court having jurisdiction of the judgment and proceedings for the enforcement thereof in an action or proceeding for amercement or in the nature of an amercement brought for the purpose. The court may proceed in a summary manner or otherwise. The delinquent sheriff or acting sheriff shall also be subject to attachment or punishment for contempt. [N.J.S.A. 40A:9-109].
Amercement via N.J.S.A. 40A:9-109, which speaks of failure to perform "any duty" regarding writs of execution, seems to overlap with N.J.S.A. 2A:15-20, addressed to service and return of process:
The sheriff or other person to whom any process is directed or delivered for service shall make prompt service and return thereof. In default of so doing he may, in the case of original or mesne process issued in the plaintiff's application, be amerced by the court in an amount not exceeding plaintiff's demand, for the use of the plaintiff.
*526 However, the latter has been held not to apply to process of execution. Ritter and Clark v. Merseles, 24 N.J.L. 627 (Sup.Ct. 1854). Amercement may also be sought in similar contexts.[3]
Amercement has been defined as "a pecuniary penalty in the nature of a fine, imposed upon a person for some fault or misconduct, he being `in mercy' for his offense," Black's Law Dictionary 107 (4 ed. 1957), and is derived from the Anglo-French "amercier." Webster's Third New International Dictionary 68 (1971). Traditionally, "amercement" has been used to describe a fine imposed on officers of the court for failing to turn over money or, more particularly, for a sheriff's neglect to levy upon or turn over proceeds of an execution. Black's, above, citing Stansbury v. Patent Cloth Mfg. Co., 5 N.J.L. 433, 434 (Sup.Ct. 1819), rev'd 5 N.J.L. 861 (E. & A. 1819).
The statutory remedy of amercement, now codified at N.J.S.A. 40A:9-109, has been available at least since 1788, see Watson v. Hoel, 1 N.J.L. 136 (Sup.Ct. 1792), and in substantially the same form. Until the most recent re-enactment of the law in 1971 providing that the sheriff can be amerced when he "fails to perform any duty imposed upon him by law in respect to writs of execution," prior versions would allow amercement only if the sheriff "neglects or refuses to execute any writ of execution...." (Emphasis supplied). The legislative history of *527 amending acts[4] does not explain the change in wording. An early case had emphasized that not every "failure to perform" constituted the statutory offense of "neglect." Hoagland v. Todd, 37 N.J.L. 544, 547 (E. & A. 1875). The distinction was also drawn in a case interpreting a related statute, N.J.S.A. 2A:17-74, 75, which makes an agent of a corporation liable for the amount due on an execution directed against the corporation if the agent "shall neglect or refuse" to supply information about corporate assets. Thompson v. Breslove, 62 N.J. Super. 208 (App. Div. 1960). Thompson (at 212) characterized the statute there at issue as "penal," and so strictly construed "neglects or refuses" to connote "a willful failure to discharge, or a reckless indifference to a known obligation" and not a "mere failure" of duty. The nature of amercement is remedial rather than penal.
... [A]s amercement is for the use of the plaintiff and is in lieu of his debt it is in the nature of a civil action ... it is clearly remedial, and not penal and must be liberally expounded. [Hustick v. Allen, 1 N.J.L. 168 (Sup.Ct. 1793)]
In Vermont a plaintiff has an action for damages against a sheriff who "willfully refuses or neglects" to execute a writ, 12 V.S.A. § 697; this may be difficult to prove. See, e.g., Dowlings, supra. New Jersey county district court practice predicates liability on "negligence" N.J.S.A. 2A:18-29. See Charlton v. Mitchell, 121 N.J.L. 285 (Sup.Ct. 1938). If the change in wording of the New Jersey statute respecting Superior Court practice by itself reflects legislative intention, the revision advances amercement as a remedy for the unsatisfied judgment creditor.
Whether or not statutory interpretation favors a liberalized remedy, plaintiff still bears the burden of proof on this motion. Since a public officer such as a sheriff is presumed to have acted properly, plaintiff must clearly establish some default of duty. Stevens v. Deats, 41 N.J.L. 340, 341, 342 (Sup.Ct. 1879); Force v. Gardner, 43 N.J.L. 417 (Sup.Ct. 1881).
*528 Reference to past cases is useful to determine whether the failure to make successive levies on the writ is the type of default for which amercement lies. Sheriffs have been amerced for various derelictions in carrying out executions: failure to inventory some of the goods levied upon, Watson, supra; failure to complete execution when there was ample time to do so, Scott v. Dow, 14 N.J.L. 350 (Sup.Ct. 1834); not proceeding to sell property levied upon according to directions of an assignor of the bond on which suit was brought rather than plaintiff or his attorney, Stephens v. Clark, 8 N.J.L. 270 (Sup.Ct. 1826); failing to execute on a debt, as directed by plaintiff's attorney, upon defendant's statement that the judgment was to be satisfied out of property of two other defendants, White v. Rockafellar, 45 N.J.L. 299 (Sup.Ct. 1833); not informing plaintiff or his attorney of the time of sale, which had to be adjourned two or three times for lack of bidders, Lorillard, supra, n. 3; improperly demanding a fee deposit from creditor in excess of amount demandable before advertising or selling levied property, Brockhurst, supra; allowing the judgment debtor to continue selling goods which had already been levied upon, Hoagland, supra, and applying the proceeds from a sale under one execution to satisfy an existing lien, Mushback v. Ryerson, 11 N.J.L. 346 (Sup.Ct. 1830).
No amercement has been allowed in similarly divers situations. Applications to amerce have been most commonly denied where plaintiffs have brought on the consequences complained of by their own instructions to the sheriff. See Kemble v. Harris, 36 N.J.L. 526 (E. & A. 1873); Stryker v. Merseles, 24 N.J.L. 542 (Sup.Ct. 1854) (sheriff did not levy after writ was in his hands because plaintiff told him not to levy until further instructions). Thus, if a plaintiff directs a sheriff to stay a sale of personal property levied upon until further orders, plaintiff assumes the risk of loss until the stay is lifted. Paterson Bank v. Hamilton, 13 N.J.L. 159 (Sup.Ct. 1832); see LeRoy v. Blauvelt, supra, n. 3; cf. Strong v. Linn, 5 N.J.L. 936 (Sup.Ct. 1820) (voluntary discharge by plaintiffs of arrested debtor is a defense *529 for sheriff otherwise liable to be amerced). Defects in pleading have defeated amercement actions. E.g., Stryker v. Merseles, supra; Ritter v. Merseles, 24 N.J.L. 627 (Sup.Ct. 1854). Other applications to amerce have been denied where plaintiff has not supplied the necessary indemnity to protect against third party claims in the property to be seized, Howard W. Middleton Co., supra, n. 1; Weller v. Lanning, 41 N.J.L. 477 (Sup.Ct. 1879); Stevens v. Deats, supra; where the sheriff did not turn over the proceeds of a sale of goods executed upon but not belonging to the defendant, Hopkins v. Chandler, 17 N.J.L. 299 (Sup.Ct. 1829); where defendant's title to real estate was not of record and there was no showing that defendant had been in actual possession or that a "reasonably diligent inquiry" would have revealed the defendant as the owner, Force, supra, or where there was no showing that a "reasonably diligent inquiry" would have led the sheriff to personal property of the defendant located within the county, id.
These cases demonstrate uniform application of the principle that a "sheriff is not liable to amercement until he shall have disobeyed positive, reasonable, lawful directions." Kemble, 36 N.J.L. at 530. From the above discussion it is clear that plaintiff has carried his burden. Israelow's instructions were consistent and direct and the successive levies requested were lawful and reasonable under the circumstances. The sheriff understood but did not comply with those instructions. Compare Dowlings, supra (plaintiff unable to prove dereliction in performance of the special limiting instructions given to sheriff as to place and property to be levied upon). Insofar as potential physical resistance thwarted the levy on July 31 and may have inhibited further levies after August 15, there was a definite failure to perform a duty with regard to an execution within the meaning of N.J.S.A. 40A:9-109. It is not denied that plaintiff repeatedly expressed a willingness to pay the mileage costs and fees associated with the levies, see N.J.S.A. 22A:4-8, 19; see, also, International Brotherhood of Elec. Workers v. Gillen, 174 N.J. Super. 326 (App.Div. 1980), nor is it alleged that plaintiff *530 was himself negligent in any way. The sheriff's failure to abide by plaintiff's instructions therefore renders him liable to be amerced.
The sheriff suggests that plaintiff should have pursued other more reasonable means to satisfy the judgment but points to no failure of plaintiff to satisfy any statutory prerequisites to the requested levies. By comparison, had plaintiff sought to execute against real property, he would have had to first attempt, in good faith, to locate personal property of the debtor and levy upon it. N.J.S.A. 2A:17-1. See Genz v. Hallmark Cards, Inc. (Matter of Silverman) 2 B.R. 326 (Bkrtcy.D.N.J. 1980); Raniere v. I. & M. Investments, Inc., 159 N.J. Super. 329 (Ch.Div. 1978). Discovery proceedings to ascertain personal assets should be conducted before real estate is levied upon. See Silverman, supra. In Spiegel, supra, plaintiff sought an order to allow a constable to enter the debtors' homes for the purpose of making an inventory and levy. The court, referring to the First Amendment right of privacy, citing Griswold v. Connecticut, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1968), was unwilling to permit "fishing expeditions" which could frighten the inhabitants of the home and possibly endanger the constable where less drastic means such as discovery proceedings or an investigation would suffice.
Plaintiff Vitale has done all that was necessary with respect to the execution herein. He identified assets of the judgment debtor subject to levy and simply directed that levy be made. The type of levy is not without precedent. Nearly 55 years ago a predecessor sheriff levied upon the gate receipts at an exhibition baseball game in Asbury Park arranged by the judgment debtor/entrepreneur which featured baseball greats Babe Ruth and Lou Gehrig. Johnson v. Lyons, 103 N.J. Eq. 315 (Ch. 1928). The stars featured at The Fast Lane may be of a different generation and genre, but a judgment creditor still has a right to have the debt satisfied. The money in The Fast Lane cash registers was subject to levy, N.J.S.A. 2A:17-15; see Crane v. Freese, 16 N.J.L. 305 (Sup.Ct. 1838), and plaintiff could properly *531 ask the sheriff to enter the bar to seize it. In light of the plaintiff's persistent efforts to negotiate a solution with both the sheriff and judgment debtor, and the unsuccessful levy on the bank account after discovery was conducted of the debtor-corporation's president, the demand upon the sheriff appears all the more reasonable.
The final issue is whether plaintiff has demonstrated a loss. Plaintiff must show that the officer's conduct has deprived him of a "substantial benefit to which he was entitled" under the writ; that but for the officer's conduct, he would have received such benefit through the execution. White, supra, 45 N.J.L. at 301. Plaintiff is not bound to prove the value of the property subject to levy because
... [i]t would be highly inconvenient and unjust to require an innocent plaintiff to prove the value of the goods which had been in the sheriff's power but which, through his neglect, may have been eloigned beyond the reach of plaintiff's investigation. [Id.]
Based on the findings that the execution was in the hands of the sheriff on July 9, 1981 and that only one levy was actually made on August 15 although the bar was open most weekend nights through the summer and is now closed for the winter, I conclude that plaintiff was denied the benefit of the writ and that the consequential loss amounts to the judgment debt of $6,317 less any amounts heretofore collected. The speculation that The Fast Lane will operate again this summer is not cognizable in mitigation of the amercement but would suggest that the sheriff pursue whatever civil remedy may be available against the judgment debtor for indemnification. Cf. Strong v. Linn, supra, 5 N.J.L. at 942 (sheriff answerable for debt is in nature of security for, or co-obligor of, debtor); Bell v. Kelly, 17 N.J.L. 270 (Sup.Ct. 1839), N.J.S.A. 2A:17-37 (exoneration from liability for unauthorized adjournment of sale before entry of amercement).
The difficult, distasteful aspects of executing writs demand that sheriffs be dealt with fairly, with an eye to the practicalities of their job. See Scott, supra, 14 N.J.L. at 351. My *532 reluctance to amerce a sheriff beset with such unpleasant tasks is only overcome by the convincing proof that Sheriff Lanzaro owed and breached a duty to plaintiff to make the successive levies as requested. In short, by invoking the remedy of amercement, I choose to satisfy plaintiff's debt where the sheriff has not.[5]
NOTES
[1] It appears that an amercement proceeding may properly be initiated by motion in the principal action. See, e.g., Brockhurst v. Kaiser, 75 N.J.L. 162 (Sup.Ct. 1907); Howard W. Middleton Co. v. Souder, 74 N.J.L. 87 (Sup.Ct. 1906).
[2] In the principal action, Vitale v. Hotel California, Inc., plaintiff obtained a default judgment based on the claim that defendant's wrongful refusal to verify that plaintiff was an employee of defendant at the time of an automobile accident deprived him of income continuation benefits under an insurance policy.
[3] N.J.S.A. 2A:15-22 (amercement of officer executing writ who fails to sign own name to return); N.J.S.A. 2A:15-25 (amercement of person ordered by court to substitute for dead or disabled sheriff, subject to amercement as sheriff would be); N.J.S.A. 2A:15-44 (amercement of surety), see Poultrymen's Service Corp. v. Winter, 101 N.J. Super. 294 (App.Div. 1968); Santos v. Anderson, 6 N.J. Misc. 799 (Sup.Ct. 1928), aff'd 106 N.J.L. 596 (E. & A. 1929); Louis v. Kaskel, 49 N.J.L. 158 (Sup.Ct. 1886); N.J.S.A. 2A:17-37 (amercement of sheriff for unauthorized adjournment of sale), see Pierson v. Chardavoyne, 89 N.J. Eq. 66 (Ch. 1918); compare Lorillard v. Welsted, 8 N.J.L. 271 (Sup.Ct. 1826), with President of Bank of New Brunswick v. Welsted, 8 N.J.L. 271 (Sup.Ct. 1826); LeRoy v. Blauvelt, 13 N.J.L. 341 (Sup.Ct. 1833). Regarding county district court practice, see N.J.S.A. 2A:18-21 (liability for escape of person committed under body execution); N.J.S.A. 2A:18-28, 29, roughly paralleling N.J.S.A. 2A:15-25 and N.J.S.A. 40A:9-109, respectively.
[4] Rev.St. 1847, p. 839, § 22; Rev.St. 1877, p. 1102, § 22; L. 1953, c. 37, § 141; L. 1971, c. 200, § 1.
[5] No appointment of an officer to enforce the amercement pursuant to N.J.S.A. 40A:9-110 will be made pending compliance with the order to be submitted. See Wandling v. Thompson, 41 N.J.L. 142, 145 (Sup.Ct. 1879) (order for attachment to issue against sheriff unless proceeds of sale paid into court within ten days).